(No. 13621.—Judgment affirmed.)

THE PEOPLE *ex rel.* Robert W. Drennan *et al.* Appellees, *vs.* S. H. WILLIAMS *et al.* Appellants.

*Opinion filed April 21, 1921—Rehearing denied June 8, 1921.*

1. SCHOOLS—*section 86 of the School law, concerning elections, construed.* Section 86 of the School law, which provides that elections shall be held under the Australian ballot system "and as detailed in section 22 and section 23" of the Australian Ballot law, must be construed to include all applicable provisions of such law, including section 24, which provides a method of assisting illiterate or physically disabled voters in preparing their ballots, otherwise it would be unconstitutional.

2. SAME—*election for community high school must be held under Australian Ballot law.* Elections to organize community high school districts and for boards of education therein, as authorized by section 89*a* of the School law, which refers to section 86 of said law for the method of election, must conform to all applicable provisions of the Australian Ballot law and not merely to sections 22 and 23 thereof.

3. CONSTITUTIONAL LAW—*constitution secures right of suffrage to the physically disabled.* The constitution secures to every citizen having the requisite qualifications a right to cast his vote, re-

gardless of the question whether he is able to read or write or understands the English language or is physically disabled.

4. STATUTES—*statute will be given valid construction, if possible.* Where an act is susceptible of two constructions, one of which will sustain and the other destroy the act, that construction will always be adopted which will sustain it.

CARTER and STONE, JJ., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

PATTON & PATTON, and BARBER & BARBER, (CLAYTON J. BARBER, and WILLIAM L. PATTON, of counsel,) for appellants.

C. F. MORTIMER, State's Attorney, JOHN E. HOGAN, and STEVENS & HERNDON, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The relators presented to the circuit court of Sangamon county their verified petition for leave to file an information against the appellants, who it was alleged were unlawfully holding and exercising the office of members of the board of education of Community High School District No. 197, charging that the district was not legally organized nor the appellants elected as a board of education because neither the election for the creation of a district nor the election for a board of education was held in conformity with the Australian ballot system. Leave was granted and an information was filed in the name of the People, to which the defendants filed a plea setting out the proceedings for the organization of the district and for their election as members of a board of education; admitting that no booths were used at the first election but alleging that three were used at the second; admitting that no indorsement was printed on the back of the ballots at either election, except that the judge giving out the ballots indorsed thereon his initials, and alleging that each election was conducted in

accordance with the provisions of sections 22 and 23 of the Australian Ballot law. To this plea a demurrer was filed, which was sustained by the court. The defendants elected to stand by their plea and judgment of ouster was entered, from which this appeal was taken.

The decision of the controversy depends upon the construction to be given to the act amending the School law as revised in 1909 by adding thereto a section to be numbered 89a (Laws of 1919, p. 908,) and section 86 of the revision of 1909 as amended in 1917. (Laws of 1917, p. 735.) Section 89a, which was added in 1919 to the revision of 1909, provides for the organization of a community high school district by an election, and further provides that if a majority of the votes cast at such election shall be in favor of establishing a community high school, an election shall be held for a board of education consisting of five members, and provides: "The manner of holding elections shall be governed by section 86 of this act." Section 86 as amended in 1917 follows section 85, which provides for an election for the organization of a township high school district, and provides that if a majority of the votes cast shall be in favor of establishing a township high school, an election shall be held for a township high school board of education, and the manner of holding the election is governed by the following provision: "Such election shall be held under the Australian ballot system as provided in the general election laws and as detailed in section 22 and section 23 of an act entitled 'An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices to regulate the manner of holding elections, and to enforce the secrecy of the ballot,' approved June 22, 1891, in force July 1, 1891, at the school house or such other place as shall be designated by the proper officers in the notice of election." The general provisions of the Australian ballot system, as provided in the general election laws, were not ob-

served in the elections in question as appears by the plea, and the question presented is whether it was the intention of the General Assembly that the elections should be conducted under such general provisions so far as applicable to elections of like character, or whether the provisions of sections 22 and 23, alone, should apply.

The general rules by which the legislative intent is to be determined have been often stated and are well known and need not be here repeated, and the nature of the act under consideration is such that but little aid is afforded by adjudged cases. The consideration of the question is also rendered more complicated by the confusion that has been introduced in legislation by the expansion of the school system. Until 1872 the legislative plan was for State-wide compulsory elementary education in district schools, but in that year provision was made for organizing township high schools. In 1909 the law relating to schools and the school system was revised, and substantially the same provision as in the act of 1872 was made for establishing township high schools. (Laws of 1909, p. 342.) That revision provided for a number of different elections, none of which were to be governed by the Australian Ballot law, which had been enacted in 1891. Following the revision of 1909 a great many acts have been passed, either amending the law as revised or previous acts, or independent of either, or legalizing elections, so that the acts as a whole present an appearance of what has been called patchwork legislation. The first of these acts which related to elections was passed in 1911, and amended an act passed in 1903 by which the elections in districts wholly within or partly within and partly without a city having an election commission were to be conducted under the Australian ballot system and acts amendatory thereof, and that act brought within such elections all the applicable provisions of the Australian Ballot law. (Laws of 1911, p. 500.) Three other school acts were passed in the same year of 1911 relating to elections

concerning high school districts, amending the revision of 1909, and none of them contained any reference to the manner of holding elections. In 1913 the General Assembly passed two acts, one amending the revision of 1909 by adding a new section 126*a,* and the other amending section 91, concerning the purchase of property, building and moving a school house or levying a tax to extend schools beyond nine months in high school districts, and these acts made no provision concerning the method of conducting the elections. In 1915 section 126*a,* which had been added in 1913, was amended by incorporating in it the same provision contained in section 86 and in the same language. (Laws of 1915, p. 626.) It will therefore be seen that there has been no general legislative plan concerning the method of holding school elections and no aid can be derived from a history of the legislation.

The language of section 86 is inclusive of all applicable provisions of the Australian ballot system by the provision that elections shall be held under that system as provided in the general election laws and as particularized, detailed or designated in sections 22 and 23. Sections 22 and 23 provide for the particular manner of voting. Section 22 provides, so far as material here, that the voter shall be allowed to enter the space enclosed by the guard rail, and one of the judges shall give him one, and only one, ballot, on the back of which such judge shall indorse his initials in such manner as they may be seen when the ballot is properly folded; and section 23 provides that on receipt of his ballot the voter shall forthwith, and without leaving the enclosed space, retire alone to one of the voting booths and prepare his ballot by making in the appropriate margin or place a cross, or writing in the name of the candidate of his choice in the blank space, or making a cross against the answer he desires to give to a question submitted to a vote of the people. If these provisions should be regarded as the only ones intended by the General Assembly to govern

the election they would prevent an illiterate or physically disabled voter from casting a vote, because by their terms he could not have assistance. The constitution secures to every citizen having the requisite qualifications a right to cast his vote, regardless of the question whether he is able to read or write or understands the English language or is physically disabled. These sections do not in terms prohibit assistance, but their provisions are such as render any assistance impossible, and the necessary result would be that they deprive the citizen of his constitutional right. Section 24 provides a method of assistance, and its provisions were held to be mandatory in *Gill* v. *Shurtleff*, 183 Ill. 440.

It is the settled rule that where an act is susceptible of two constructions, one of which will sustain and the other destroy the act, that construction will always be adopted which will sustain it. To include section 24 in the statutory provision of section 86 is clearly within the language of that section, as it is a part of the Australian ballot system as provided in the general election laws, and unless it is included the act must be held unconstitutional and void. If section 24 must be included, then it is clear that the legislative intention was not to limit the application of the Australian ballot system to sections 22 and 23, but to cast about the election all the protection provided by the Australian Ballot law.

There is a further reason for concluding that it was intended to protect the elections for township high schools and community high schools, to which sections 86 and 126a are limited, in the fact that there is a very wide difference between such elections and the ordinary school district election. Such districts embrace large territory and an extension and expansion of the school system and involve increased powers of taxation, and, as is well known, create great public interest and result in bitter and acrimonious contests. These considerations exclude ignoring or disregarding any words of this statute on the ground that the

General Assembly intended differently from the language employed. The court is not authorized to tamper with language employed by the General Assembly for the purpose of producing results which the court may conclude the General Assembly ought to have intended, even if such a conclusion could be reached in this case. The wisdom of any provision is not for the courts so long as it is within the legislative power and the manner of conducting elections, and safeguards to be established are for the General Assembly and not for the courts. An election for a community high school cannot be conducted under the Australian ballot system, as provided in the general election laws and as detailed in section 22 and section 23 of that system, unless all applicable requirements of the system are observed.

The court did not err in sustaining a demurrer to the plea, and the judgment is affirmed.    *Judgment affirmed.*

Mr. JUSTICE CARTER, dissenting:

I do not agree with the reasoning or conclusion of the foregoing opinion. In order to reach the right result in this case we must always have before us the statutes to be construed,—that is, section 89*a* of the amended School law and section 86 of the same law, and particularly the fourth paragraph of section 86, which reads as follows: "Such election shall be held under the Australian ballot system as provided in the general election laws and as detailed in section 22 and section 23 of an act entitled, 'An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices to regulate the manner of holding elections, and to enforce the secrecy of the ballot,' approved June 22, 1891, in force July 1, 1891, at the school house or such other place as shall be designated by the proper officers in the notice of election."

When the Australian Ballot law was first enacted, in 1891, it was provided in the first section that said law should not apply to the election of "trustees of schools,

school directors, members of boards of education," etc.,
(Hurd's Stat. 1917, p. 1341,) and it has been held that
said law when enacted, and for years thereafter, did not
apply to school elections. (*People* v. *Cowden,* 160 Ill. 557;
*Village of East Springfield* v. *City of Springfield,* 238 id.
534.) The law with reference to certain school elections
has been amended in recent years several times, but none of
these amendments have directly and in terms repealed the
provision of the Australian Ballot law above quoted, which
states that the provisions of said law shall not apply to
school elections. If that provision has been repealed it must
have been by implication, and it has been held by this court
that repeals by implication are not favored. (*Village of
Ridgway* v. *County of Gallatin,* 181 Ill. 521.) The doctrine
of this case was quoted with approval by this court on the
question whether school elections should be held under the
Australian Ballot law, in *People* v. *Brown,* 189 Ill. 619. It
is the duty of the courts to construe both acts so as to avoid
repeal if such a construction can be given, and a statute will
never be held to be repealed by implication if such course
can be avoided by any reasonable hypothesis, and it is only
when there is an irreconcilable conflict between two acts, the
result of that conflict is the later act amends the earlier by
implication. *Holmgren* v. *City of Moline,* 269 Ill. 248.

In order to ascertain whether or not this amendment of
the School law repealed by implication the provisions of the
Australian Ballot law the court should ascertain from the
law the intention of the legislature. The intention of the
law-makers is the law, (*Hoyne* v. *Danisch,* 264 Ill. 467,)
and in interpreting and construing statutes the primary
rule always is to ascertain and give effect to that inten-
tion. (25 R. C. L. 960.) Rules of statutory construction
are laid down to assist in reaching the real intent of the
legislature. They are not substituted for all other rules.
(*Warner* v. *King,* 267 Ill. 82.) In attempting to ascertain
the real intention of the legislature and the proper construc-

tion of a statute the intention must be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent, having in mind that a thing within the intention of the legislature is regarded within the statute though not within the letter, and a thing within the letter is not within the statute if not within the intention. A statute is passed as a whole and not in parts or sections, and therefore, in order to reach the true intention, the entire statute should be construed, (*Louisville and Nashville Railroad Co.* v. *Industrial Board,* 282 Ill. 136,) and it should be so construed that no clause, sentence or word shall be superfluous, void or insignificant, and, if possible, so that every sentence or word shall be given its ordinary meaning and acceptation. *Wells Bros. Co.* v. *Industrial Com.* 285 Ill. 647; *Crozer* v. *People,* 206 id. 464; *Illinois Central Railroad Co.* v. *City of Chicago,* 138 id. 453; 2 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 380.

Under the holding of the opinion that the whole of the Australian Ballot law was intended to be made applicable by section 86 of the School law, it must follow that the specific provision found in section 1 of the Australian Ballot law, that the election of the members of the board of education shall not be within the law, has been repealed by implication. It must also follow that the specific statement that sections 22 and 23 should apply to the School law must be held superfluous and is left without any meaning, for if all the provisions of the Australian Ballot law apply, there was absolutely no necessity of referring specifically to sections 22 and 23. In view of the fact that the legislature inserted in the amendment to the School law the provision that sections 22 and 23 of the Australian Ballot law should be specifically followed, it is somewhat difficult to reach the conclusion from the wording of the amendment that it also intended to adopt, specifically and in detail, all the provisions of the Australian Ballot law. The holding also ig-

nores, if it does not overrule, another settled rule of construction: that "words of general import in a statute are limited by words of restricted import immediately following, relating to the same subject." 36 Cyc. 1119; see, also, 25 R. C. L. 1010; *City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264; 2 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 387.

I agree fully with the argument that an amendment to a statute should be construed in the light of the necessity for a change in the law as to methods of election, the mischief to be remedied and the object to be attained, and the history of school elections, but I do not agree that the situation was such that the legislature clearly intended by this amendment, because of these reasons, to throw about school elections the restrictions of the entire Australian Ballot law. The legislature, without question, intended by this amendment that the general spirit of the Australian ballot system as to the secrecy of the ballot and protection of the ballot-box should be followed, but I believe it intended that this should only apply in a general way as to the provisions of the Australian Ballot law, except sections 22 and 23, which it plainly intended should be carried out in detail. To illustrate: The failure to use booths in the conduct of the school election does not on this record render this election void on that ground, alone. On the pleadings before us such failure does not seem to have affected the fair and free expression of the voters. The plea avers and the demurrer admits that the election "was conducted in a large room, where the judges and clerk admitted from time to time to the space used for voting no greater number of voters than could mark their ballots and vote in secret and without interference or confusion, and the voters had ample opportunity to, and did, mark and deposit their ballots in secret, without interference or observation as to how they voted, and that * * * all of the legal voters of said territory had a free and fair opportunity to vote." In this

condition of affairs, under the reasoning of *Moyer* v. *Vandeventer,* 12 Wash. 377, the failure to provide booths did not invalidate this election; and this doctrine was quoted with approval by this court on this point in *Choisser* v. *York,* 211 Ill. 56, on page 66.

It can well be argued, as shown by the history of legislation upon the Australian Ballot law and the amendments of the School law, in the light of the decisions with reference to school elections, that it was the plain purpose of the legislature, in adopting section 86 of the School law, to divest these school elections of many of the burdensome mandatory provisions of the Australian Ballot law and to provide for the fair ascertainment of the will of the people of the local unit without imposing on the school authorities many of the hard and fast precautions which have been considered necessary for general elections; that such school authorities in control of a school election are not so organized that they can readily arrange for all the detailed and complicated machinery in the conduct of school elections that are provided under the Australian Ballot law for general elections, such as in section 14 of that law requiring the ballots to be indorsed on the back with the words "Official ballot," followed by the date of election and a *fac simile* signature of the clerk or other officer who has caused the ballots to be printed. The school officials charged with carrying on such school elections have so few such duties to perform that it cannot be assumed that they could easily observe every formality under the strict provisions of the Australian Ballot law. Then, too, the expense of such elections under the Australian Ballot law would be much greater than it would be under the old system of conducting school elections; and this would seem to be true even though sections 22 and 23 of the Australian Ballot law are followed. "The success or failure of popular government in the end rests on the great mass of the citizens,—'the plain people.'" (*People* v. *Green,* 265 Ill. 39.)

The complicated machinery of the Australian Ballot law should not be required in the conduct of ordinary school elections unless the legislature has plainly and clearly so required. In my judgment the legislature did not plainly so intend here by the wording of section 86 which is being construed. The failure to comply with any provision of the law not necessarily mandatory which does not affect the fair and free expression of the will of the voters does not avoid an election. *Blankinship* v. *Israel*, 132 Ill. 514; *People* v. *Crossley*, 261 id. 78; *In re Chagrin Falls*, Ann. Cas. 1916E, (Ohio) 1004.

Conceding for the purposes of this case that if sections 22 and 23 are the only sections of the Australian Ballot law that were adopted by said amendment to the School law, then said amendment would be unconstitutional. I do not think the amendment should be held unconstitutional for that reason, alone. I fully agree with the general doctrine of the opinion that a law should not be declared unconstitutional if by any reasonable construction the legislative intent can be carried out by holding the law constitutional and that all reasonable doubts must be resolved in favor of its constitutionality, (*Perkins* v. *Cook County Comrs.* 271 Ill. 449; 2 Lewis' Sutherland on Stat. Const.— 2d ed.—sec. 497;) and that where the language of an act will bear two constructions equally obvious, that which upholds its constitutionality is preferred. (Endlich on Interpretation of Statutes, sec. 178.) But such rules of construction do not warrant the avoidance of unconstitutionality in a statute by forcing upon its language a meaning which, upon a fair test, is repugnant to its terms. Where the language will not fairly bear a construction consistent with the constitution the courts can only refuse to enforce the act. (Endlich on Interpretation of Statutes, sec. 180; *People* v. *Sweitzer*, 266 Ill. 459.) This rule favoring constitutionality certainly does not intend that all other settled rules of construction of statutes shall be disregarded, and particu-

larly the rule that the intent of the legislature is the law. Then, too, if only the application of sections 22 and 23 of the Ballot law renders that portion of the act unconstitutional, there remains in the School law a complete system for conducting these elections, and any departures from that law that may have occurred in the elections in question are not shown to be more than mere irregularities which do not affect the validity of the elections.

Having in mind the history of legislation with reference to school elections and the decisions of this court as to the Australian Ballot law as applying to school elections, as well as the necessity of said law in all its particulars applying to school elections, it seems to me unreasonable to hold that the amendment of the School law which specifies that the Australian ballot system as provided in the general election laws and detailed in sections 22 and 23 of the Australian Ballot law should apply to school elections, intended that all the provisions of the Australian Ballot law should apply. It seems much more reasonable to hold that said sections 22 and 23 were the only provisions of the law that were intended to apply to these school elections in detail, and that if this renders said amendment unconstitutional then it should be so held, rather than to hold that all the provisions of the Australian Ballot law, including all the various mandatory provisions which require much detail and great extra expense, were intended to be applied to school elections.

Mr. Justice Stone, also dissenting:

I concur in the foregoing dissent of Mr. Justice Carter, and do not concur in the opinion adopted in this case for the further reason that I am of the opinion that the application of the Australian Ballot law to elections for the formation of community high school districts, as held by the opinion, is class legislation, as the Australian Ballot law is not made to apply to all high schools of the same class.

Section 85 of the School law provides for elections concerning the organization of township high schools, called by the trustees of schools. The elections to organize such districts are provided for in section 85 and are to be conducted by the boards of trustees under the provisions of the general School law. No reference is made to the Australian Ballot law or any part thereof. Section 87 of the School law provides for the creation of township high schools by two or more townships or two or more districts, and the elections provided for such organization are to be under section 85 of the School law. Section 88 of the School law provides for the organization of high school districts from parts of adjoining townships. The elections provided for in the organization of such districts are under the general School law and no reference is made to the Ballot law. The high schools provided for under sections 85, 87 and 88, as well as the community high schools under section 89a, are all four-year high schools requiring the same general course of study and are high schools of the same class when organized. The territory comprised in high school districts organized under the three preceding sections may be of equal or even greater extent than that in community high school districts, and therefore the basis of difference in classification given in the opinion, as applied to these various high schools, does not exist, yet in the elections for the organization of these schools the Australian ballot system is made to apply to but one kind of schools,—that is, community high schools organized under section 89a. There clearly can be no rational difference which would form a basis for a different classification of these high schools so as to permit the enactment of a law applicable to one and not applicable to all of them, and the act applying the Australian Ballot law, or sections 22 or 23 thereof, to elections in community high school districts is clearly class legislation.