(No. 14771.—Judgment affirmed.)

THE PEOPLE *ex rel.* Samuel J. Stout, Appellant, *vs.* ROBERT W. DRENNAN *et al.* Appellees.

*Opinion filed April 18, 1923.*

1. SCHOOLS—*when community high school district is compact and contiguous.* A community high school district which is seven and one-half miles north and south and approximately six miles east and west and has a school house site very near the center of the district, accessible by good roads, is sufficiently compact and contiguous within the meaning of section 89*a* of the School law.

2. SAME—*when the county superintendent must call election.* Upon the filing of the proper petition under section 89*a* of the School law the county superintendent must call an election for the organization of a community high school district although the territory covered by the petition overlaps territory included in a former petition in compliance with which an election was called, as it is his duty to call an election in each proposed district when proper petitions are filed.

3. SAME—*when names may be withdrawn from petition after election is called.* A petitioner may withdraw his name from a voluntary petition at any time before action is taken thereon, and, although an election has been called on a petition for the organization of a community high school district, if the election is subsequently held illegal the petitioners may withdraw their names before the calling of a second election.

4. SAME—*territory need not constitute a community except for school purposes.* Section 89*a* of the School law does not specify that the territory out of which a community high school district is to be organized shall constitute a community for any purpose other than for school purposes or that the same shall have a community center, but in the language of the statute permission is given to establish a community high school district out of any contiguous and compact territory described in the petition.

5. SAME—*allegation of plea that territory constitutes a community is admitted by demurrer.* In a *quo warranto* proceeding attacking the organization of a community high school district, the allegation in the plea of justification that the territory of the district constitutes one community is admitted to be true by the filing of a general demurrer to the plea; and the fact that the west line of the district is the east line of an adjoining village not included

in the district is not sufficient, under the pleadings, to support a finding that the district is not a community for school purposes.

6. SAME—*meaning of the word "community."* A "community" is a body of people having common rights, privileges or interests, or living in the same place under the same laws and regulations, or having a common character or likeness.

THOMPSON, C. J., specially concurring.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

C. F. MORTIMER, State's Attorney, W. ST. J. WINES, PATTON & PATTON, and BARBER & BARBER, for appellant.

STEVENS & HERNDON, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The State's attorney of Sangamon county, on the relation of Samuel J. Stout and in the name of the People, by leave of the circuit court of said county filed an information in the nature of *quo warranto* against appellees, Robert W. Drennan, Charles S. Matthew, Eugene McAtee, C. H. Drennan and George E. Southwick, calling upon them to show by what authority Community High School District No. 206 claims to exist and by what authority they claim to hold the offices of president and members of the board of education of the district. Appellees filed a plea of justification, to which appellant filed a general demurrer. The demurrer was overruled by the court, and appellant having elected to stand by his demurrer, the court entered an order finding the district validly organized and appellees to be the lawful officers thereof and entered judgment quashing the writ. This appeal followed.

Appellant contends that the court erred in not sustaining the demurrer to the plea for three reasons: (1) The district is abnormal in size and not composed of compact and contiguous territory; (2) the county superintendent of schools, after having acted upon the petition for the for-

mation of the Chatham district, had no power to permit withdrawals from that petition and recognize a new petition taking away half of the territory; and (3) the district was not limited to a single community with a community center but reaches out and "grabs territory from another community."

Community High School District No. 206 contains forty-three and eleven-sixteenths sections. It contains all of the town of Ball, in Sangamon county, which is government township 14, north, range 5, west of the third principal meridian, except the west half of sections 6 and 7, the northeast quarter of the northwest quarter and the west fourth of section 18, and the west fourth of sections 19, 30 and 31, in said township. The district also contains the south one and one-half miles of the town of Woodside, or township 15, north, range 5, west of the third principal meridian, which territory adjoins the town of Ball on the north. The district further contains a strip a mile and one-half long north and south by one-half of a mile east and west in the southeast corner of the town of Curran, or township 15, north, range 6, west of the third principal meridian, which latter strip adjoins the west end of the strip taken from the town of Woodside. The distance east and west across the south three and three-fourths miles of the district is five and three-quarters miles. The remaining portion of the town of Ball in the district is five and one-half miles east and west by two and one-quarter miles north and south, and the remainder of the school district in the towns of Woodside and Curran is six and one-half miles east and west by one and one-half miles north and south. The greatest north and south length of the district is seven and one-half miles. The school house site is located very near the center of the district. The district is both contiguous and compact within the meaning of section 89a of the School law, under which it is organized, as shown by the above description of the district.

The Chatham district mentioned in appellant's second ground for sustaining the demurrer to the plea is Community High School District No. 197, that was sought to be organized before the district now under consideration was organized. The attempted organization of the Chatham district was held invalid by the circuit court of said county and its alleged board of education was ousted by the same judgment of the court. That judgment was affirmed by this court on the ground that the elections were void because not properly held under the Australian Ballot system. (*People* v. *Williams,* 298 Ill. 86.) The Chatham district was eight miles east and west and six miles north and south, and the village of Chatham is situated near its center. The district in question overlaps the eastern part of the Chatham district on the north, east and south sides thereof and takes about twenty-four sections off the easterly end of the Chatham district. The provisions of section 89a, under which these districts were sought to be organized, provide that upon the receipt of a petition signed by fifty or more legal voters residing "in any contiguous and compact territory, whether in the same or different townships" described in the petition, the county superintendent of schools of the county in which the territory or the greater part thereof is situated shall order an election to be held for the purpose of voting for or against the proposition to establish a community high school, by posting notices, etc. By the foregoing provisions it clearly appears that it is not optional with the superintendent to call an election when the proper petition is filed signed by a sufficient number of legal voters residing in the district. In the case of overlapping districts, as disclosed in this record, it is the duty of the county superintendent to call an election in each district when proper petitions are filed by a sufficient number of legal voters residing in the respective districts.

The plea of appellees makes the showing that while the cause concerning the Chatham district was pending in this

court there was filed with the county superintendent the petition for the organization of the school district in question, together with a sufficient number of withdrawals from the original petition for the organization of the Chatham district to reduce the number of signatures thereon to less than fifty in number; that prior to the decision of this court there were submitted to the legal voters of the Chatham district the propositions to select a site, to purchase a site, to erect a school building and issue bonds to provide the necessary funds therefor, and that all of said propositions were defeated by a majority of more than eighty votes. The plea further avers that 104 legal voters of the district in question signed the petition for the organization of the district, and that the county superintendent so found and certified. It is nowhere averred in the plea that any one of those persons withdrawing their names from the former petition signed the petition in question, and no such claim is made by appellant. It is therefore immaterial, in the consideration of this case, whether the superintendent allowed or did not allow the signers of the former petition, or any number of them, to withdraw their names therefrom. If it were necessary to pass upon the legality of such withdrawals, we think it is clear that such persons had a legal right to withdraw their names from such petition. The former election or attempted election to organize the Chatham district was void *in toto,* and every act of the superintendent in calling and advertising the election was also a nullity. No further attempt was made to call a second election, and the voters of the district had refused to select or purchase a school site or to build a school house or to issue bonds to support a school. The petition for the organization of that district at the time of the withdrawals therefrom had virtually the same standing as it would have had had no election been called, and the signers of that petition had the legal right to withdraw therefrom at any time before a second election was called to vote upon its organization. The law

is well settled that a petitioner can withdraw his name from a voluntary petition at any time before action is taken thereon. There had been no legal action taken on this petition and therefore it was proper to allow the names to be withdrawn. *People* v. *Oakwood,* 290 Ill. 45; *Malcomson* v. *Strong,* 245 id. 166.

The plea set forth in detail every action taken to organize the district in question from the time of the signing and filing of the petition by the 104 voters up to and including the election for the organization of the district and the election of the board of education, and every requirement of the statute was followed strictly, and appellant does not in any way question these facts or challenge the legality of any act leading up to the organization of the district or the election of the school board. In our view of this case the action of the court in overruling the demurrer to the plea should be sustained without further consideration of the matters set forth in appellant's third proposition as ground for sustaining the demurrer. There is absolutely no requirement in section 89a that the territory out of which a community high school district is to be organized shall constitute one community for any purpose other than for school purposes, or that the same shall have a community center. The positive language of the act is that the territory out of which the school district is to be formed shall be "any contiguous and compact territory, whether in the same or different townships, described in the petition." The only other requirements of the statute are concerning the proper steps to be taken to organize territory into a community high school district. When such territory is legally organized into a school district and the high school is established and going, the territory will then be a community for such high school purposes. In other words, permission is given by the act to establish a community high school district out of any contiguous and compact territory described in the petition, and such permission is not limited to terri-

tory having a community and a community center for any other purpose, previous to its organization. If the questions whether or not the territory out of which a community high school district is organized is or was a community for any purpose before such organization, or if the size of the district, condition of the roads and bridges, and other such matters, enter into the question of the legality of the district after it is organized, the plea in this case was not demurrable upon any of those grounds.

In addition to the matters already indicated, it is averred in the plea that after the organization of the district and the election of the school board at an election conducted by the people of the district, the people' thereof voted to select and purchase the school site already mentioned, to erect a school building thereon and to issue bonds in the sum of $40,000 to purchase the site and to erect the building. The vote to organize the school district was 462 to 20, or more than 23 votes for the proposition to one against it. The following facts are also averred in the plea: Glenarm is the only village in the territory in question. It has a population of about 75, is not the community center, and is situated about midway between the east and west lines of the town of Ball and one mile north of the south line of the district. The town hall of said town is not located in the village but is located one-half mile west and one mile south of the school site. There are also five churches located in the school district,—one Methodist, one Baptist, one Christian, one Catholic and one Cumberland Presbyterian. The territory included within the district is one community. It is located so close to the city of Springfield that a large majority of all the business and trading of the inhabitants is done in Springfield, the north line of the district being about four miles from the southern limits of said city. The Springfield-Litchfield public road, which is paved with brick or concrete from Springfield to a point one and one-half miles north of the district and which will be shortly so improved

to the south line of the district, runs by the school house
site, and is also crossed at the school house site by an-
other good public road running east and west.   There are
no mountain ranges, lakes, rivers or swamps in the district
or any obstacles of any kind which prevent easy access to
the school site from any part of the district.   Pupils of high
school age can conveniently travel to the school house site
in any kind of weather within the time allowed them, be-
fore and after school hours.   The district does not include
within its boundaries any school district organized under
any special law or special or private charter or any part of
such a district or part of any other township or community
high school.   All that part of the school district included in
the town of Curran is the land and home of Ben F. Cald-
well, and he was one of the signers of the petition for the
formation of the district and is still desirous that his land
and residence be included therein.   More than two-thirds of
the legal voters residing in the westerly section of the dis-
trict desire to be included within the district and are op-
posed to being included in any other community for high
school purposes.   The incorporated village of Chatham in
1920 had 848 inhabitants.   The east line of the village is
the west territorial boundary of the district, and the north
line of the village is a mile and one-half south of the south
township lines of the towns of Curran and Woodside, which
is the north line of the town of Ball.   The site of the
school house of common school district No. 128, which dis-
trict includes all of sections 6, 7 and 8 in township 14,
north, range 5, west of the third principal meridian, is lo-
cated in said village.   That school district has a substantial
two-story-and-basement brick school house, with six regu-
lar class-rooms and two additional recitation rooms.   For
several years, up to and including the school year 1920,
high school studies were taught in that district covering a
full four-year course, with an average attendance of from
44 to 61 high school pupils, with an average of five pupils

from Ball township, but the school was taken off of the accredited list of the University of Illinois some time during the school year 1918-19. After the attempted organization of Community High School District No. 197 the high school studies were abandoned in school district No. 128, and during the school year 1920-21 33 pupils of school district No. 128 attended the Auburn township high school at Auburn,—a larger city situated a few miles to the southwest of the village of Chatham,—and 19 pupils from school districts whose buildings are located in the political town of Chatham, outside the village of Chatham, attended the Auburn township high school, and seven pupils from school districts whose buildings are in the political town of Ball attended the Auburn township high school. The children of only two families residing in the political town of Ball now attend school at common school district No. 128. The north line of this school district is the south line of the towns of Curran and Woodside. To the north of the district in question the city of Springfield is the nearest community which maintains a high school, and to the south of the district the nearest high school is maintained in the village of Divernon, approximately three and one-half miles south of the south line of the district.

From the foregoing it is apparent that the demurrer to the plea was properly overruled. The demurrer admitted the material facts pleaded. The contention of appellant is, that because the west line of the district is the east line of the village of Chatham, the community of Chatham is invaded and territory taken that belongs to that community. There is no claim that the territorial rights of any other community are invaded. The town of Chatham, which includes the village of Chatham, includes an entire government township, and in addition to that, all the territory west of the town of Ball that is in township 14, north, range 5, west of the third principal meridian. Where the community center of the town of Chatham is, if it has

one, does not appear from the pleadings. The north, east and south lines of the district in question are straight lines, and its west line, except the north one and one-half miles, is the west line of the town of Ball, as has already been shown. All of the district is practically urban territory, and it has the same right to organize a community high school as does the town of Chatham or the village of Chatham, and the plea averred that this territory constituted one community, only, which is admitted by the demurrer to be true. The word "community" has been defined by this court as a body of people having common rights, privileges or interests, or living in the same place under the same laws and regulations, or having an association of interests or a common character or likeness. In the case of *People* v. *Young,* 301 Ill. 67, it is recognized that there is a possibility of a community boundary of a city being on the very line of the city, as in cases where there exists a physical fact sufficient to turn people the other way. Under the averments in the plea it must be held that the territory of the school district in question constituted one community, only, and the bare fact disclosed that the children of two families in Ball township attend the common school at Chatham furnishes no sufficient ground for sustaining the demurrer, and if any territorial rights of the village of Chatham or of the town of Chatham were illegally invaded it was incumbent upon appellant to plead the same. The fact that the children of two families from the town of Ball attend school at Chatham is not inconsistent with the idea that they are part of a community of which the school district is composed, for other purposes.

If the terms "contiguous" and "contiguous and compact," when used with respect to a school district, mean territory so closely united and so nearly adjacent to the school building that all the children residing in the district, their ages considered, may conveniently travel from their homes to the school building and return in a reasonable time and

with a reasonable degree of comfort, and if this definition be accepted as the proper one to adopt in the construction of section 89*a* of the School law, it is clear that the contention of appellant that the district is not composed of contiguous and compact territory and that the organization of the district illegally invades the territory of the village of Chatham or of the town of Chatham cannot be sustained.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE THOMPSON, specially concurring: I concur in the conclusion that the district is valid but can not subscribe to all that is said in the opinion.