(No. 15218.—Judgment affirmed.)
GOODRICH Q. LEWIS *et al.* Appellants, *vs.* COMMUNITY HIGH SCHOOL DISTRICT No. 95 *et al.* Appellees.

*Opinion filed April 18, 1923—Rehearing denied June 7, 1923.*

SCHOOLS—*election to choose school house site is not governed by Ballot law.* Since the amendment of 1921 to sections 86 and 91 of the School law, an election to choose a school house site or to build a school house is not governed by the Australian Ballot law but is to be held under the general provisions of the School law, and ballots which contain the description of a site printed on separate paper and pasted on the ballot are not invalid.

APPEAL from the Circuit Court of DuPage county; the Hon. ADAM C. CLIFFE, Judge, presiding.

HAIGHT, ADCOCK, HAIGHT & HARRIS, (EDMUND D. ADCOCK, of counsel,) for appellants.

FISCHER, THORNTON. & FISCHER, (W. H. FISCHER, of counsel,) for appellees.

S. L. RATHJE, and SAMUEL J. HOWE, for intervening appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

A special election was called by the board of education of Community High School District No. 95 in DuPage county and was held on July 22, 1922, to vote upon the following propositions: (1) To locate a school house site; (2) to authorize the board of education to purchase a school house site; (3) to authorize the board of education to build a school house; (4) to authorize the board of education to issue bonds of said high school district in the amount of $159,000. The board of education provided two voting precincts and appointed judges and clerks of election. Returns of the election were made and were canvassed on

July 25, 1922. The result declared was that a certain tract of land had received a majority of the votes cast and had been selected as a school house site, and that the several propositions 2, 3 and 4 had been carried, authorizing the board of education to purchase the site, build a school house and issue bonds. The appellants, 103 in number, filed their petition in the circuit court of DuPage county on August 21, 1922, alleging that they were residents and legal voters of the school district and praying the court to declare each of the ballots cast and counted by the judges and clerks of the election for the school house site which by the ballots and returns had a majority were void and of no force or effect and to declare the true result of the election upon the various propositions voted upon. The school district, the members of the board of education, the township treasurer and the county superintendent were made defendants, and the district and the board of education filed a general demurrer to the petition. By leave of court 76 persons who alleged that they were residents and legal voters of the school district and that a part of the members of the board of education were in favor of other sites than the one selected and would not be interested in making a complete defense, intervened in the suit and asserted that the school house site chosen represented the desires of a majority of the electors and that its selection was legal. The intervening petitioners also filed their general demurrer, and the court sustained the demurrers and dismissed the petition.

The board of education provided each voter with a printed ballot with the initials of one of the judges on the back. First on the ballot was the proposition to locate a school house site and this direction: "Place a cross (X) in a square to the right of the description." This was followed by four tracts, as follows:

"A. The Randall block, bounded by Franklin street, West street and Gary avenue, in the city of Wheaton, Du-

Page county, Illinois, and described as block 2 of the map of the county clerk's assessment division of the south half of the northeast quarter of section 17, township 39, north, range 10, east of the third principal meridian.

"B. The Campbell tract, bounded on the north by Prairie avenue, on the east by Lexington street, on the south by Forest avenue and on the west by Main street, in the city of Wheaton, DuPage county, Illinois, consisting of blocks 4, 5, 6, 7, 8 and 9 in N. E. Gary's Second addition to said city, including streets within said tract adjoining said blocks.

"C. The Old Orchard tract, bounded on the north by Harrison avenue, on the east by West street, on the south by Jefferson avenue and on the west by Gary avenue, (sometimes called Jewell's road,) in the city of Wheaton, DuPage county, Illinois, consisting of those parts of blocks 6 and 7 lying east of said Gary avenue, and all of blocks 12 and 13, and streets within said tract so bounded, in Noah E. Gary's First addition to the town of Wheaton, in said county.

"D. The J. C. Wheaton, Sr., homestead block, bounded by Evergreen street, Wheaton avenue, Roosevelt road and West street, and described as block 5 of the plat of W. I. and F. E. Wheaton's re-subdivision of lot 2 in block 1 and all of block 4 of J. C. Wheaton's Second addition to Wheaton, DuPage county, Illinois."

Opposite each tract there was a square on the right for the cross. Beneath these tracts so described was the following: "A voter desiring to vote for a site other than the ones above described should insert the description thereof in the blank space below and place a cross (X) in the square to the right of such description." Below this was a blank space for a description of such a site as a voter might desire to vote for, with a square opposite the same for the cross. The other propositions followed on the ballot, with squares to vote for or against the same.

The tracts described on the official ballot received the following votes: The tract marked A had 36 votes, the

tract marked B 534 votes, the tract marked C 34 votes, and the tract marked D 7 votes. On 909 ballots, in the blank space provided for the insertion of the description of a site which a voter might desire to vote for, papers had been pasted on which there was printed the following: "The Schulz *et al.* tract, bounded on the north by Willow avenue, on the east by Reber street, on the south by Illinois street and on the west by Main street, and described as block 5 of Warren L. Wheaton's addition to Wheaton, and block 4 of Warren L. Wheaton's Second addition to Wheaton, DuPage county, Illinois." In the squares opposite this description there were crosses made by the voters.

The other propositions resulted as follows: There were 850 votes for and 90 against the proposition to authorize the board of education to purchase a school house site; the proposition to authorize the board to build a school house had 847 for and 89 against, and the proposition to authorize an issue of bonds had 756 for and 362 against.

In the case of *O'Connor v. High School Board of Education,* 278 Ill. 618, there was a proceeding to contest elections held in 1915 for the purpose of selecting a school house site and for building a new school house and issuing bonds to purchase the site and pay for the building. The jurisdiction of courts to contest elections being purely statutory and there being no statute conferring the jurisdiction, it was held that it did not exist and a court could not entertain such a petition. In 1921 sections 117 and 118 of the Election law, relating to contests of elections, were amended, and section 117, which had been limited to elections upon any subject submitted to a vote of the people of a county, was enlarged so as to include elections on all public measures or subjects submitted to the voters of any municipal corporation or any subdivision of the State. The section as amended provides that any five electors may contest the result of any such election by filing in the circuit or superior court a written statement within thirty days

after the result of the election shall have been determined. Section 118 as amended gives the right to any one or more electors to appear and intervene in such proceedings for the purpose of participating in the prosecution or defense of the same. (Laws of 1921, p. 428.)

The error alleged and relied upon is that the election was required by law to be held under the Australian Ballot system enacted to preserve the secrecy of the ballot, under which ballots on which stickers are pasted are illegal and void. (*Fletcher* v. *Wall*, 172 Ill. 426; *Roberts* v. *Quest*, 173 id. 427; *McSorley* v. *Schroeder*, 196 id. 99; *Jackson* v. *Winans*, 287 id. 382.) The question submitted for decision is whether the statutes required the election to be held under the Australian Ballot system or under the general School law. Among the numerous acts which have been passed in recent years either amending the School law as revised in 1909 or amending previous amendatory acts or independent of either will be found the provisions from which the question submitted is to be determined.

In 1919 section 89a was added by insertion in the revision of 1909, and it provided for the organization of a community high school district by an election, and provided if a majority of the votes were in favor of establishing a community high school, an election should be held for a board of education consisting of five members. The section included two elections, and provided that the manner of holding elections should be governed by section 86 of the act. (Laws of 1919, p. 908.) Section 86 as then in force had been amended in 1917, and provided that the election therein mentioned should be held under the Australian Ballot system, as provided in the general election laws. (Laws of 1917, p. 735.) Neither of these sections had any relation to or made any provision concerning an election to choose a school house site, to purchase a site, to build a school house or to issue bonds, but were confined to elections to organize a community high school district

and to elect a board of education. If they had never been amended or changed they would not have controlled this election. In the case of *People* v. *Williams,* 298 Ill. 86, an election for the creation of a community high school district and a subsequent election for members of a board of education, which were the elections provided for by section 89*a,* were each held and conducted without a compliance with the Australian Ballot law. It was decided that the language of section 89*a,* and of section 86, to which it referred, required that the elections authorized by section 89*a* should be conducted under the Australian Ballot law, which was the natural and necessary interpretation of the language used. In 1921 section 86 was amended, and the provision that the election therein specified should be held under the Australian Ballot system was eliminated. (*People* v. *Brown,* 306 Ill. 245.) Instead of that requirement the section as amended and in force at the time of this election provided specifically for the methods of conducting the election and was expressly limited to the nomination of candidates for members of the board of education. It provided that nominations should be made only by petition; that the names of candidates should be printed on the ballot; that the ballots should be furnished by the district; that one of the judges should give the voter one, and only one, ballot, upon the back of which the judge should indorse his initials; that upon receipt of the ballot the voter should forthwith, without leaving the enclosure in which the election was held, prepare his ballot, fold it so as to conceal the cross-marks thereon and deposit the ballot without undue delay, and that no voter should vote or offer to vote any ballot except the official ballot received from the judges of the election. A provision was added for assistance to a voter not able to read the English language, or unable, by reason of physical disability, to mark his ballot, which was evidently to meet what was said in

*People* v. *Williams, supra,* on that subject. (Laws of 1921, p. 803.) By the same act amending section 86, section 91 was also amended, and as amended it provides that for the purpose of building one or more high schools, conducting and supporting such schools and paying all necessary expenses, the territory for the benefit of which a high school is established under any of the provisions of the act, and all high school districts organized under any statute in force at the time of their organization, and all high school districts legalized by statute, shall be regarded as school districts, and the board of education of each of said high school districts shall in all respects have the powers and discharge the duties of boards of education elected under the general School law in common school districts having a population of 1000 or more and not exceeding 100,000 inhabitants. It provides that the board of education of any such high school district shall have the right to build or acquire and maintain one or more sites and erect thereon buildings when in their judgment such additional facilities are needed by the district and the site or sites thereof have been lawfully selected.

An election to choose a school house site and to build a school house, or for any of the other purposes for which the election in this case was held, is not governed by the Australian Ballot law but such an election is to be held under the general provisions of the School law, and the 909 ballots on which the description of a site was printed on a paster were not in violation of any provision of the law. The court therefore did not err in sustaining the demurrers and dismissing the petition.

The judgment is affirmed.

*Judgment affirmed.*