(No. 30380.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* M. A. BIRDSONG *et al.,* Appellees.

*Opinion filed November 20, 1947.*

OSCAR C. ZACHARY, State's Attorney, and WILLIAM L. FAY, both of Jacksonville, for appellant.

THOMSON & THOMSON, of Jacksonville, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

On March 3, 1947, a petition bearing 237 signatures was filed in the office of the county superintendent of schools of Morgan County requesting the superintendent to call an election for the purpose of voting for or against the proposition to establish a community consolidated school district within the contiguous territory consisting of school districts Nos. 50, 51, 64, 65 and 79, all situated in the county. The county superintendent ordered an election to be held on March 15, 1947. Of 232 votes cast, 215 votes favored the organization of the community consolidated school district. On March 18, the superintendent designated the new district "Community Consolidated School District No. 2 of the County of Morgan and State of Illinois." March 31, the superintendent ordered an election to be held on April 12, 1947, for the purpose of electing a board of education for the district. M. A. Birdsong was elected president, and Milton N. Birdsell, Lloyd L. Black, H. E. Hembrough, W. Chauncy Carter, Thomas Cosgriff, and Charles W. Rhodes, members, of the board of education.

On July 12, 1947, the People of the State, by the State's Attorney of Morgan County, filed a complaint in *quo warranto* in the circuit court of Morgan County challenging the organization and legal existence of the school district and the election of the defendants, Birdsong, as president, and Birdsell, Black, Hembrough, Carter, Cosgriff, and Rhodes, as members, of its board of education. Defendants answered the complaint, justifying their membership on the board of education by the proceedings incident to the formation of the district and their election as

president and members of the board. Plaintiff's motion to dismiss the answer and for judgment was denied, plaintiff elected to abide by the complaint, and defendants' motion for judgment was allowed. From the judgment rendered in favor of defendants, plaintiff prosecutes this appeal.

Plaintiff attacks, first, the validity of the petition filed with the superintendent of schools requesting him to call an election, asserting that it did not, on its face, meet the requisite statutory provisions. Section 8-1 of the School Code (Ill. Rev. Stat. 1945, chap. 122, par. 8-1,) provides that any contiguous territory bounded by school district lines may be organized into a community consolidated school district, as provided in article 8. Section 8-1, so far as relevant, ordains, "A petition shall be filed with county superintendent of schools of the county in which the territory described in the petition or the greater part thereof is situated, signed by at least twenty per cent (20%) or 200 of the voters, whichever is fewer, residing within the territory." The statute does not prescribe any exact form or the precise context of the petition. The challenged petition commences, "We, the undersigned voters and residents of the contiguous territory hereinafter described." It bears 237 signatures with school district designations given for 230 and with addresses for 234. Plaintiff contends the petition was fatally defective, invalidating the proceedings to organize the district, since it contained no allegation, either express or implied, that it was signed by at least twenty per cent or by 200 voters of the territory, or that signers were voters residing within the territory. If the petition filed appears to have been properly signed by the prescribed number of legal voters residing in contiguous and compact territory, a mandatory duty devolved upon the superintendent of schools, under the statute, as a ministerial officer, to call the election requested. On the other hand, if the petition showed on its face that it did not satisfy the requirements of the statute, he should

have refused to call the election. *Frye* v. *Hunt,* 365 Ill. 32.

The petition assailed in *Frye* v. *Hunt,* relied upon by plaintiff as decisive of the first contention, commenced, "We, the undersigned legal voters of Hamilton and Franklin counties, State of Illinois, and of the territory below described." The names and addresses of fifty-eight signers followed but the face of the petition failed to show that the signers were legal voters residing in the described territory. There was no allegation or any showing otherwise that at least fifty-eight signers resided in the territory. The signatures themselves afforded no information as to whether the signers actually resided or lived in the territory. We pointed out that the words "legal voters" did not necessarily mean "legal voters residing in the territory described" for the obvious reason a person may be a legal resident of one place and an actual resident of another. The petition in the present case is free from the vice of the petition condemned in *Frye* v. *Hunt.* It expressly declares that the signers are "voters and residents of the contiguous territory hereinafter described." Containing more than 200 signatures, the petition shows upon its face compliance with the statutory requirement that it be signed by twenty per cent, or 200, whichever is the fewer of the voters. The superintendent could readily ascertain the fact of compliance with the statute by inspecting the petition and counting the signatures. The presence of the specified number of signatures on the petition satisfies the statutory requirements in this regard. An allegation in the petition of the number signing is not essential. Following the word "We" in the opening sentence of the petition, the explanatory phrase follows, "the undersigned voters and residents of the contiguous territory hereinafter described." The words last quoted obviously refer to "We" and proclaim that the signers are both voters and residents of the territory described. Plaintiff's argument that the words "voters and residents" do not mean "voters and

actual residents" is hypercritical. Where the expression, "voters and residents," is used, as here, its manifest meaning is that the voters are actual residents of the territory. The organization of a community high school district has been sustained where the petition purported to be signed by 110 "legal voters and residents of said territory particularly described." *Chesney* v. *Moews*, 317 Ill. 111. In *People ex rel. Board of Education of LaPrairie Community High School District No. 10* v. *Board of Education,* 380 Ill. 311, petitions were signed by 33 "residents and legal voters, in the territory described in the petitions." We hold that the language, "We, the undersigned voters and residents of the contiguous territory hereinafter described," in the petition in this case, carries the same connotation as if it had read, "We, the undersigned voters residing in the contiguous territory hereinafter described."

Plaintiff's next contention is that the election for the organization of the district was void because illegal ballots were used. The caption on the face of the ballot bears the designation, "Official Ballot" for the election on Saturday, March 15, 1947, in school districts Nos. 50, 51, 64, 65 and 79, in Morgan County. Then follows the facsimile signature of the county superintendent of schools. Immediately below this signature are instructions to voters. Next appears the statement of the proposition in the language of the statute. (Ill. Rev. Stat. 1945, chap. 122, par. 8-2.) Plaintiff's complaint is that the back or outside of the ballot does not meet the requirements of section 16-3 of the Election Code, (Ill. Rev. Stat. 1945, chap. 446, par. 16-3,) which prescribes, "On the back or outside of the ballot, so as to appear when folded, shall be printed the words 'Official Ballot,' followed by the designation of the polling place for which the ballot is prepared, the date of the election and a facsimile of the signature of the clerk or other officer who has caused the ballots to be printed." Section 16-7 of the Election Code provides that, whenever

a public measure is submitted to be voted upon by the. electorate within any district or political subdivision less than the State the substance of such public measure shall be clearly indicated on a separate ballot, and that "All provisions of this Act relating to ballots shall apply to such separate ballot." Obviously, section 16-3 relating to. indorsements upon the back of a ballot can apply only to the ballots to which section 16-7 is applicable. Admittedly, the ballots used at the election on March 15, 1947, did not comply with the requirements of the Ballot Law, now incorporated in the Election Code. The School Code contains no provision requiring a printed indorsement on the back of the ballot.

Plaintiff asserts, however, that the School Code does not supersede or contradict the provisions of the Election Code in this respect, pointing out that while the School Code prescribes the form and wording of the proposition to be voted upon, it does not detail or provide for the manner of printing ballots. Plaintiff places reliance upon *People ex rel Drennan* v. *Williams,* 298 Ill. 86, and *People ex rel. School Directors* v. *Exton,* 298 Ill. 119, decided in 1921, construing the School Law (now the School Code) after amendments were added in 1919. Section 89a of the School Law, added in 1919 to the revision of 1909, (Laws of 1919, p. 908,) then provided that the manner of holding elections should be governed by section 86 of the act which, in turn, declared that the elections should be held under the Australian ballot system, as provided in the general election laws, and as detailed in sections 22 and 23 of the Australian Ballot Law. In the cases cited, this court held that section 86 of the School Law included all applicable provisions of the Australian Ballot Law and, in particular, that elections to organize community high school districts and for boards of education therein, as authorized by section 89a of the School Law, must conform to all applicable provisions of the Australian Ballot

Law and not merely sections 22 and 23. In *People* v. *Williams,* 298 Ill. 86, the school laws, consisting of the revision of 1909 and subsequent amendments, were reviewed. They then represented no general legislative plan concerning the method of holding school elections. In particular, the School Act did not make provision for assistance to illiterate or disabled voters at school elections, and this court observed that unless section 24 of the Australian ballot system providing for assistance to such voters was included, the School Act would be unconstitutional and void. *People* v. *Exton,* 298 Ill. 119, held that the election of the president and members of the board of education of a community consolidated school district was illegal because the back of the ballot did not contain a facsimile signature of the county superintendent of schools.

To obviate the objections expressed by this court in *People* v. *Williams,* 298 Ill. 86, the General Assembly, in 1921, amended sections 86, 91, 126 and 126a of the School Law by striking all references formerly contained in these sections to the general election laws and by amending sections 86 and 126a to provide for assisting illiterate or disabled voters. (Laws of 1921, p. 803.) In 1922, this court held that because of the amendment to section 86, added in 1921, the Ballot Law no longer applied to elections to vote upon the proposition of establishing a high school district. In *People ex rel. Duckwitz* v. *Brown,* 306 Ill. 245, the following pertinent observation was made, "While since 1909 the mania to amend our School law has led to the enactment of legislation some of which was difficult to understand, reconcile and harmonize with other provisions of the School law and some of which was declared unconstitutional, we are of opinion the 1921 legislation clearly shows that it was the intention of the legislature to exempt elections to establish community high school districts, and for boards of education of such districts, from the provisions of the Australian Ballot law."

In *People ex rel. Brothers* v. *Dodds,* 310 Ill. 607, this court held that an objection to the organization of a community high school district upon the ground that the election was not conducted conformably to the Australian Ballot Law was no longer a valid objection. In the recent case of *Sanders* v. *Township of Salem,* 385 Ill. 362, involving an election under the Liquor Control Act, we pointed out that the statute itself provides the form in which the proposition to prohibit sales at retail of alcoholic liquors shall be printed, observing, "There is nothing in the Liquor Control Act similar to the provisions of section 16 of the Ballot Act requiring that the proposition be stated on the back of the ballot."

We now regard the proposition as settled that where a statute, as here, namely, the School Code, prescribes the particular form of a ballot, article 16 of the Election Code is inapplicable. *Routt* v. *Barrett,* 396 Ill. 322; *Sanders* v. *Township of Salem,* 385 Ill. 362; *People ex rel. Burkholder* v. *Peoria and Eastern Railway Co.* 375 Ill. 197; *People ex rel. Sandberg* v. *Grabs,* 373 Ill. 423; *People ex rel. Hudson* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 360 Ill. 180.

Plaintiff contends that even if the provisions of the Election Code be deemed inapplicable to the organization election and the printing of the ballots, the ballot was, nevertheless, illegal under the School Code itself. Section 8-2 of the School Code, to the extent pertinent, provides that if any village is located within the territory described in the petition, the county superintendent of schools shall establish one or more voting precincts wholly within the part of the territory lying outside the corporate limits of the village. Section 8-4 provides that if a village is located within the territory of the proposed district, the proposition establishing a community consolidated school district shall not be deemed to have received a majority of the votes cast on the proposition unless a majority of the votes

cast within the corporate limits and, also, a majority cast in the territory outside of the corporate limits, the count to be taken separately, are in favor of establishing a community consolidated school district. From this, plaintiff insists that the statute requires the ballots to bear the designation of the polling place for which they are printed. In the present case, a part of the territory of the proposed district included the village of South Jacksonville. Neither section 8-2 prescribing the form of ballot nor any other provision of the School Code requires the designation of polling places for which the ballots are intended. The pleadings disclose that separate returns and certificates as to the results from each precinct were made. Within the corporate limits of South Jacksonville, 149 votes were cast for, and 7 against, the proposition of establishing the new school district. In the two voting precincts outside the corporate limits of the village, 66 votes were cast for and 10 against. It is clear the proposition received such overwhelming majorities in each precinct that the result would not have been changed had all the adverse votes been cast in either the incorporated or unincorporated territory.

Plaintiff urges that the ballot in the organization election was illegal for the further reason that it contained no information as to the proposed territory and did not fully or fairly inform the voter as to the proposition upon which he was to vote. The point sought to be made is that the proposition might well be construed as an invitation merely for an expression of opinion by the voter as to the principle involved. The ballot contains the language verbatim of the proposition, as prescribed by section 8-2 of the School Code. We deem this contention frivolous.

Our disposition of the contention made against the validity of the ballot used in the organization election is decisive of the contention that the ballot used in the election for president and members of the board of education was illegal because no indorsements were printed upon the

back. Furthermore, section 16-1 of the Election Code (Ill. Rev. Stat. 1947, chap. 46, par. 16-1,) specifically excludes from its application elections, among others, for trustees of schools, school directors, and members of boards of education.

Plaintiff points out, however, that the ballot used in the board of education election does not purport to be a ballot for "Community Consolidated School District No. 2" but, instead, for the nonexistent "South Jacksonville Consolidated School District No. 2," and that the record discloses petitions for the nomination of candidates were filed less than twenty-one days prior to April 12, 1947. Plaintiff does not contend that any voters were misled by the discrepancy in the name of the school district or that the result was in any way affected. The School Code does not require ballots to bear the name of the district. This being so, even the appearance on the ballot of the correct name would have been surplusage. (*Knappenberger* v. *Hughes,* 377 Ill. 126.) From the record, it affirmatively appears that the village of South Jacksonville was included within the district and that, after the election on March 15, 1947, the county superintendent designated the district as school district No. 2. Under section 3-46 of the School Code, no other school district in Morgan County could bear the same number.

Plaintiff contends that since the petitions for the nomination of candidates were not filed twenty-one days prior to the election, the ballots should not have contained the names of any candidates. Petitions accompanied by eleven statements of candidacy were filed with the county superintendent on March 27 and 28, 1947. On March 31, the superintendent ordered an election to be held twelve days thereafter, namely, on April 12, for the purpose of electing a board of education. The election was thus held twenty-eight days after the organization election, sixteen days after some of the petitions for nomination were filed and

fifteen days after others were filed. The names of all candidates submitting petitions appeared upon the ballot. Section 8-4 of the School Code requires the county superintendent to forthwith order an election within thirty days from the day of the election establishing the school district by posting notices for at least ten days in ten public places throughout the district. It is provided, however, that "Petitions for the nomination of candidates for the offices of president and members of the board of education at the first election should be addressed to the county superintendent of schools. * * * Subsequent elections shall be conducted by the board and shall be governed by the provisions of sections 7-4 and 7-5." In short, section 8-4 does not specify when the petitions shall be filed. This plaintiff concedes but submits that section 7-5 of the School Code fixes time limitations on filing petitions. Section 7-5 provides that petitions for the nomination of candidates for the offices of president and members of the board of education shall be filed with the secretary of the board of education at least twenty-one days prior to the election. It is plain that section 7-5 does not apply to the first election of a board of education subsequent to the election creating the district for the adequate reason that nomination petitions could not be filed with the secretary of a board of education not yet in existence. Section 8-4 clearly means that an election for members of the board may be held as early as the eleventh day after the organization election. Unless section 8-4 be ignored, the only reasonable statutory construction is that petitions for the nomination of candidates may be filed at any time before the date of the election. It follows that section 8-4, rather than section 7-5, applies to the first election for members of a board of education following an election establishing a new community consolidated school district.

Plaintiff contends, finally, that voters of a portion of the territory in school district No. 10 and of the entire

territory in school districts Nos. 52 and 53, in Morgan County, annexed to the district after the organization election, namely, between March 24 and April 10, 1947, participated and illegally voted in the election of members of the board of education on April 12, 1947, thereby rendering the election void. Reference is made to section 8-4 of the School Code which provides that, following an affirmative vote in favor of a proposed district, the superintendent shall call a board election and post notices "throughout the district." The point urged is that the language of the statute contemplates calling an election for the district formed by the organization election,—not for a district formed by the organization election and territories annexed thereafter. This contention must fall because the qualifications of the voters were determined as of the date on which the election was held rather than the day the district was organized. Furthermore, plaintiff does not contend, and the pleadings fail to show, that the results of the board election were in any manner affected by the discrepancies charged. Even if the votes were illegal, as charged, neither the election nor its result would be affected. The established rule is that, where the evidence fails to show for which candidate illegal votes were cast, these votes will be eliminated by dividing them between the candidates in the proportion the number cast for each bears to the total legal votes cast. *Flowers* v. *Kellar,* 322 Ill. 265.

A consideration of the effect of an act entitled, "An Act to legalize the organization of certain Community Consolidated School Districts," approved July 2, 1947, (Laws of 1947, p. 1544) becomes unnecessary. We are constrained to observe, however, that a curative act may remedy such defects as improper petitions, failure of petitions to bear the requisite number of signers, improper ballots and the casting of illegal votes. (*People ex rel. Reich* v. *McCoy,* 387 Ill. 288.) The validating act of July 2, 1947, is similar in form to earlier validating acts construed in

the numerous cases reviewed in *People* v. *McCoy*. Any doubts with respect to the validity of the petition for organizing the school district or the ballots used at the elections on March 15 and April 12, 1947, have been removed by the validating act of July 2, 1947.

The judgment of the circuit court of Morgan County is affirmed.

*Judgment affirmed.*