## THE PEOPLE *ex rel.* B. S. PRETTYMAN *et al.*
### *v.*
## THE BOARD OF SUPERVISORS OF LOGAN COUNTY.

1. STATUTES — *subscribing stock in railroad companies — interpretation of particular one.* Where, under the act incorporating the Pekin, Lincoln and Decatur Railroad company, and which authorized certain counties to subscribe stock therein, the president of the board of directors presented to the board of supervisors of Logan county a petition signed by two hundred persons, who styled themselves legal voters of the county, requesting them to submit to the voters of the county, at the ensuing election, a proposition for the county to subscribe $300,000 to the capital stock of the company, and to issue its bonds therefor, with interest at ten per cent, — *held,* that the supervisors were not warranted in refusing such petition upon the ground that the president of the company having alone acted in the matter, therefore, the petition had not been regularly presented, it appearing that his action was authorized by a resolution of the board of directors. This was sufficient.

2. SAME — *concerning right of supervisors to require proof of genuineness of petition — and when such proof will be deemed waived.* And in such case, when it was objected by the supervisors that no evidence existed of the fact of the genuineness of the petition, and the board of directors thereupon offered to make the necessary proof thereof, which was refused — *held,* that, while the supervisors might have acted upon it as genuine without proof, or

might have required proof that the petitioners were legal·voters of the county, yet, by their refusal to hear such proof, they must be regarded as having waived it.

3. SAME—*powers conferred upon the supervisors and directors, respectively under this act.* Under this act, when the requirement is made as therein directed, the supervisors *must* submit the proposition to a vote of the county; they having no discretion in this matter, nor as to the amount so asked to be subscribed, the power to fix the amount having been conferred upon the board of directors. The supervisors have the power *only* in case the subscription is voted, to withhold it so long as any two of the counties named in the act shall fail or refuse to vote for such subscription; also to fix the rate of interest upon the bonds issued, and the time of their payment, within the limits fixed by the act.

THIS was an application to this court for a peremptory writ of mandamus, in the name of the people of the State of Illinois, on the relation of Benjamin S. Prettyman and others, constituting the board of directors of the Pekin, Lincoln and Decatur Railroad company, against the board of supervisors of Logan county, to compel them to submit to the legal voters of that county a proposition for subscription to the capital stock of said company to the amount of $300,000, and to issue the bonds of said county in payment therefor, with interest at ten per cent, as authorized by the act of incorporation of said company.

The further facts are stated in the opinion.

Messrs. WYATT & BEASON, and Mr. T. LYLE DICKEY, for the relators.

Messrs. PALMER & HAY, for the respondents.

Per CURIAM: The eleventh section of the act incorporating the Pekin, Lincoln and Decatur Railroad company, declares, that, when the company shall become organized, it shall be the duty of the board of supervisors of the counties through which the road shall pass, and of which Logan is one, upon the application in writing of the board of directors of the road, to order an election in their proper counties on a day to be named in the application, to determine whether such county will or not sub-

scribe stock to the railroad company; the amount of the stock to be determined by the board of directors of the road, and to be named in the application.

The twelfth section declares, that, should the voters of such county refuse to vote such subscription, the board of directors, by a petition signed by at least two hundred legal voters of such county, presented to the board of supervisors thereof, may require them to submit the same proposition to the voters of such county at any subsequent, general, or county election.

The thirteenth section declares, that if it shall appear that a majority of all the persons voting at such election have voted for subscription, then the board of supervisors shall subscribe on the request of the company through their president or treasurer, for shares of the capital stock to the amount voted by the county; and to issue and deliver to the president or treasurer the same amount as the amount of stock so subscribed, of the bonds of such county, payable at any time specified therein, not exceeding twenty years from their date, with interest not exceeding ten per cent per annum, payable annually. This section contains a proviso, that it shall be at the option of the county authorities of each county not to issue its bonds, so long as any two of said counties have failed to vote for a subscription as provided by the act. The ninth section declares that Logan county may subscribe not less than $250,000, and not exceeding $350,000. The act also declares, that the board of supervisors of the several counties shall not be required to submit a proposition to subscribe to the capital stock of the road to the voters of the counties, at more than two elections in any one year.

It appears, that, on the 4th of June, 1867, the board of directors, by application in writing, as provided in the act, induced the board of supervisors of Logan county to order an election on the 25th of that month, to determine whether the county would subscribe $300,000 to the capital stock of the company and issue bonds therefor at ten per cent interest. That at the election thus held, the county refused to vote for a subscription. That afterward, at the September session, 1867,

of the board of supervisors, the board of directors presented a petition signed by two hundred persons, styling themselves legal voters of the county of Logan, and required the board of supervisors to submit the same proposition for the county to subscribe $300,000 to the capital stock of the company, and to issue bonds bearing ten per cent interest therefor to the voters of Logan county, at the ensuing county election to be held on the Tuesday after the first Monday in November, 1867. That on the presentation of this petition, the board of supervisors, by resolution, refused to submit the proposition to the voters of the county.

It is urged, that the petition was not regularly presented, as the president of the board of directors alone acted. It appears, that, in presenting the petition and requiring the submission, he acted under a resolution adopted by the board of directors. This answers the requirements of the statute, and was sufficient.

It is again objected, that the board of supervisors had no evidence that the persons signing the petition were legal voters of Logan county. It appears by the record, that the board of directors, to obviate this objection, offered both to make the proof before the committee of the board of supervisors having in charge the subject, and also before the board. In this the board of directors did all that was within their power.

They were unable to do any thing further by which they could avail themselves of the benefits of the act. The petition being signed by the requisite number of names, purporting to be legal voters of the county, the board would have been authorized to act upon it as genuine and what it purported to be. Or they might have required proof if they desired it before making the order submitting the question. But, having refused to hear the evidence when offered by the board of directors, they must be regarded as having waived proof that petitioners were legal voters. By refusing to hear the evidence, we may infer that the real objection was not that they did not know that the petitioners were legal voters of the county.

When the requirement is made, in the mode prescribed by

the act, on the board of supervisors, they have no discretion, but must make the order submitting the proposition to the vote of the county. Nor have they under the act any discretion as to the amount. That power is conferred upon the board of directors of the road, to fix the sum to be voted upon between the maximum and minimum named in the statute. We do not see that the act has left the board of supervisors with any very extensive discretion in the matter. The act, in terms, gives them the option, after the vote has resulted in favor of subscription, to withhold it so long as any two of the counties named shall fail or refuse to vote for subscription. Nor does the act fix the rate of interest the bonds shall bear, only declaring that they shall not bear a higher rate than ten per cent, leaving the board of supervisors to fix the rate. They also have the power to fix the period, within twenty years, at which the bonds when issued shall be paid. As to the rate of interest which the bonds shall bear, or the time when they shall become due, the board of directors have no control. And, those things being discretionary, the court has no power to indicate the rate of interest or the time the bonds shall run. Those questions must be left to the action of the board. We can only require the board to submit the proposition of subscription to the capital stock of the road by Logan county, to the voters of the county, for the sum of $300,000, leaving the board of supervisors to fix the rate of interest which the bonds shall bear, and the period when the bonds shall be paid, to their discretion.

Relators having showed that they have complied with the law, and it being the duty of the board of supervisors in such case to submit the question to the voters of the county at the election to be held on Tuesday after the first Monday in November next, a peremptory writ of mandamus must be awarded.

*Mandamus awarded.*