(Nos. 14669-70-71-72-73-74.—Reversed and remanded.)

W. H. McKeown *et al.* Appellants, *vs.* Theo. C. Moore, County Superintendent of Schools, *et al.* Appellees.

*Opinion filed June 21, 1922.*

1. Certiorari—*jurisdiction of an inferior tribunal must appear from record.* It is the office of the common law writ of *certiorari* to cause the record of an inferior tribunal to be brought before the court for its determination, from an inspection of the record, alone, whether such tribunal had jurisdiction or had exceeded its jurisdiction or has failed to proceed according to the essential requirements of the law.

2. Same—*what proceedings may be reviewed by certiorari.* Proceedings which may be reviewed by the common law writ of *certiorari* must be judicial and not ministerial or legislative, but it is sufficient if the proceedings are *quasi* judicial, as where a body of officers are invested by the legislature with power to decide upon the property rights of others.

3. Schools—*ex-officio board, acting under section 90 of School law, was required to keep record.* Under the invalid amendment of section 90 of the School law it was the duty of the *ex-officio* board created by said act to keep a record of its official acts even though the statute did not expressly require the board to keep a record.

4. Same—*what finding of the ex-officio board is not sufficient under validating act.* The *ex-officio* board created by the invalid amendment of section 90 of the School law had no jurisdiction to act under the invalid law, and a finding by said board, on a petition to change the boundaries of a high school district, that the petition was signed by a majority of the legal voters is not sufficient to satisfy the requirement of the validating act of June 24, 1921, nor is the petition itself evidence of the fact.

5. Same—*the common law writ of certiorari is proper to review action of the ex-officio board.* The common law writ of *certiorari* is proper to review the action of the *ex-officio* board changing the boundaries of a high school district under the invalid amendment of section 90 of the School law, the provision for an appeal to the Superintendent of Public Instruction having been held unconstitutional.

Appeals from the Circuit Court of Pike county; the Hon. Harry Higbee, Judge, presiding.

Capps & Weaver, and Stevens & Herndon, for appellants.

Williams & Williams, for appellees.

Mr. Justice Dunn delivered the opinion of the court:

In 1917 the General Assembly amended section 90 of the School law by enacting another section bearing the same number which omitted all reference to the subject matter' of the original section 90 and covered an entirely different subject. (Laws of 1917, p. 739.) The amended law created an *ex-officio* board, composed of the county superintendent of schools, the county judge and the county clerk, with discretionary power, upon petition of legal voters, to change the boundaries of high school districts by detaching or annexing territory and to create community high school districts. This amendment was held unconstitutional in the case of *Jackson* v. *Blair,* 298 Ill. 605, at the June term, 1921. Before that decision, in February, 1920, a petition was filed with the *ex-officio* board of Pike county requesting that the territory known as school district No. 70 in Fairmount and Perry townships, Pike county, Illinois, be detached from Community High School District No. 171 and added to the non-high-school territory in Pike county, and the *ex-officio* board on June 16, 1920, granted the prayer of the petition. On July 14, 1921, the members of the board of education of Community High School District No. 171, together with two other residents and legal vot-

303–29

ers of that district, filed in the circuit court of Pike county a petition for a writ of *certiorari* directed to the members of the *ex-officio* board, requiring them to certify to the court the petition for the detachment of the territory from the district and all proceedings and orders upon such petition, and all records, papers, plats, documents and files pertaining to such proceedings, and their final decision and action. The writ was ordered to issue, and the respondents made a return certifying a copy of the petition for the detachment of the territory from Community High School District No. 171, together with all records, papers, plats, documents, files and orders pertaining to said proceedings. Upon such return the petitioners for the writ moved the court to quash the record of the *ex-officio* board, and the respondents entered their motion to quash the writ. The court denied the motion to quash the record and sustained the motion to quash the writ and entered judgment against the petitioners for costs, from which they have appealed.

On the part of the appellees it is contended that *certiorari* will not lie because the statute creating the *ex-officio* board did not require the board to keep a record. The only office of the common law writ of *certiorari* is to cause the record of an inferior tribunal to be brought before the court for its determination whether the inferior tribunal had jurisdiction or had exceeded its jurisdiction or had failed to proceed according to the essential requirements of the law, where no appeal or other direct means of reviewing the proceeding is given, and the court determines from an inspection of the record alone whether the inferior tribunal had jurisdiction of the parties and the subject matter and whether it had exceeded its jurisdiction or had otherwise proceeded in violation of law. No presumption of jurisdiction is entertained but the facts upon which jurisdiction is founded must appear in the record. (*Funkhouser* v. *Coffin*, 301 Ill. 257.) Assuming the constitutionality of section 90 as amended, an *ex-officio* board is a public board

exercising duties similar, in some respects, to some of those performed by school trustees, highway commissioners or drainage commissioners. Their acts within the authority conferred upon them by law conclude the rights of the inhabitants and tax-payers of the territory affected by their acts. These acts are intended to establish liabilities and confer privileges and to have permanent force until changed by competent legal authority. The change as established by the *ex-officio* board must be recognized and complied with by all persons within the territory concerned. How can that change be recognized and complied with unless some record of it exists? Must the community depend for its information on its promulgation by word of mouth? If so, how is the word transmitted to be authenticated? The section under which the acts were done gives an appeal to the Superintendent of Public Instruction. How was he to know what the order was from which the appeal was taken? It was necessarily implied from the nature of the board and the nature and effect of its powers that a record should be made of its official acts. In regard to a board of trustees created by the legislature of Virginia to lay off in town lots certain lands which had been granted and to dispose of them for the use of certain beneficiaries, the Supreme Court of the United States held that the book of the body thus created for public purposes, in which were recorded its proceedings, was the best evidence of its acts and ought to be admitted wherever those acts were to be proved. (*Owings* v. *Speed,* 5 Wheat. 420.) A book of minutes kept by the trustees of a town, though not required to be kept by law, is evidence of the acts of the trustees. (*State* v. *Van-Winkle,* 25 N. J. L. 73.) So a township or district school book is the best evidence of the proceedings of the school board. (*Gearhart* v. *Dixon,* 1 Pa. St. 224.) Although not expressly required by statute, it was the duty of the *ex-officio* board to keep a record of its proceedings. It would introduce inextricable confusion if the acts of such a pub-

lic body creating school districts and changing their boundaries were not authenticated by a record but rested entirely in parol, subject to be proved by the testimony of witnesses.

The return of appellees consists of two parts, marked, respectively, exhibit A and exhibit B. Exhibit A is stated to be a true, correct and complete copy of the petition for the detachment of the territory, together with all records, papers, documents, files and orders pertaining to said proceedings; and exhibit B a true, correct and complete copy of all the notices, testimony, evidence, rulings, offers, decisions and exceptions upon the hearing upon said petition. The record as recited in exhibit A consists of a petition signed by thirteen persons, purporting to be two-thirds of the legal voters within school district No. 70, followed by these memoranda:

"Filed with the county superintendent of schools Jan. 14, 1920.
THEO. C. MOORE, *Superintendent.*
"Re-filed Feb. 11, 1920.    THEO. C. MOORE.

"Hearing set April 16, 1920, at county court room, Pittsfield, Illinois. Continued to May 24 at the same place. Taken under advisement until June 16, 1920, when the prayer of the petition was granted. From this decision the board of education of the Community High School District No. 171 prays an appeal to the State Superintendent of Schools, which appeal is granted.
BURR SWAN,
C. A. HELKEY,
THEO. C. MOORE,
*Ex-officio Board of Pike County."*

A notice is also attached of a public hearing at the county court room in Pittsfield on April 16, 1920, at nine o'clock A. M., for the hearing of objections, if any, against the granting of the petition.

Since the act under which the *ex-officio* board was acting was unconstitutional the record of its proceedings could not confer jurisdiction, and upon this return, or any other return which it might have made, the court could have made no other order than one quashing the record of its proceedings. However, after the decision in *Jackson* v.

*Blair, supra,* the General Assembly on June 24, 1921, passed an act to validate changes in the boundaries of township or community high school districts, (Laws of 1921, p. 828,) which was approved by the Governor, and is claimed by the appellees to have had the effect to make the order of the *ex-officio* board of June 16, 1920, legal, and the circuit court gave the act that effect. This act has been held to be constitutional. (*Milstead* v. *Boone,* 301 Ill. 213.) It purports to legalize the acts of the *ex-officio* board falling within its conditions, one of which is that the change must have been petitioned for where the territory was detached from a high school district and added to a non-high-school district, as in the present case, by a majority of the legal voters at a school election, residing within the territory detached from the high school district. There is nothing in the record to indicate that the petition in this case was signed by such majority. The recital in the petition itself is no evidence of the fact, and even a finding by the so-called *ex-officio* board would be no evidence, for that body not being legally constituted was without power to make any finding. The circuit court erred in not quashing the record of the *ex-officio* board.

It is further insisted by the appellees that the act of the *ex-officio* board is not of such a character as may be reviewed by *certiorari.* · It is said in *Mason and Tazewell Drainage District* v. *Griffin,* 134 Ill. 330, that the general rule seems to be that the act to be reviewed by *certiorari* must be judicial in its nature and not ministerial or legislative. It is also said that it is not essential that the proceedings should be strictly and technically judicial in the sense in which that word is used when applied to courts of justice, but it is sufficient if they are what is sometimes called *quasi* judicial. If the body of officers acting are invested by the legislature with power to decide on the property rights of others they act judicially in making their decision whatever may be their public character, and it was

stated that it has been held that the writ lies to review the proceedings of supervisors, commissioners, city councils, etc., in opening, altering or discontinuing public streets and highways as to their legality or regularity, though not as to the question of the expediency of such improvements. So the writ has been held to lie to review the action of school trustees in uniting and dividing school districts; (*Miller v. Trustees of Schools,* 88 Ill. 26;) of highway commissioners in laying out and establishing highways; (*Hyslop v. Finch,* 99 Ill. 171;) of a county board of supervisors in removing the county treasurer from office; (*Donahue v. County of Will,* 100 Ill. 94;) of drainage commissioners in annexing land to a district; (*Mason and Tazewell Drainage District v. Griffin, supra;*) of a county superintendent of schools in reviewing appeals from the organization of a high school district; (*Fisher v. McIntosh,* 277 Ill. 432;) and of a Superintendent of Public Instruction on an appeal from an order of an *ex-officio* board under this very section 90 now under consideration. (*Jackson v. Blair, supra.*) The writ of *certiorari* was properly granted to review the action of the *ex-officio* board. Since the provision for an appeal to the Superintendent of Public Instruction was held to be unconstitutional, the petitioners for the writ had no other remedy.

Five other petitions were filed at the same time with the *ex-officio* board asking for the detachment from district No. 171 of the territory or part of the territory of other school districts. The same action was taken upon these petitions and the same returns were made to the writs of *certiorari* which were issued to review the decisions of the *ex-officio* board on those petitions. The cases were all submitted together, the questions presented are identical, and the judgments in all the cases will be reversed and the causes will be remanded to the circuit court, with directions to quash the records in all cases.

*Reversed and remanded, with directions.*