(No. 15388.—Judgment affirmed.)

J. M. WISWELL, *et al.* Appellants, *vs.* O. P. SIMPSON, County Superintendent of Schools, *et al.* Appellees.

*Opinion filed June 17, 1924.*

1. SCHOOLS—*women entitled to vote for school officers may sign petition to detach territory.* Under the last clause of section 2 of the curative act of June 24, 1921, (Laws of 1921, p. 828,) construed in connection with section 270 of the School law, defining the term "legal voter," women who are entitled to vote for any school officer not named in the constitution are entitled to sign a petition to detach territory from one high school district and attach it to another.

2. SAME—*in a certiorari proceeding the sufficiency of the record is the question to be determined.* In a *certiorari* action to determine the legality of a proceeding detaching territory from one high school district and adding it to a non-high-school district, it is not necessary, in order to bring the proceeding within the validating act of June 24, 1921, that it shall appear, otherwise than by the recitals of the petition and the record of the *ex-officio* board, that the petition was signed by a majority of the legal voters residing in such territory.

3. SAME—*record of ex-officio board must be considered as evidence of its action.* Where the acts of the county judge, county clerk and county superintendent of schools, "acting as an *ex-officio* board," are attacked by a *certiorari* proceeding, (which is for the express purpose of testing the sufficiency of the record of such board,) the record made by it must be considered as evidencing the action of the board and as being the basis of such action. (*McKeown* v. *Moore*, 303 Ill. 448, distinguished.)

4. SAME—*acquiescence is of no consequence in a certiorari proceeding.* Acquiescence by tax-payers in a proceeding to detach

313—4

territory from one high school district and add it to another is of no consequence in an action of *certiorari* to test the legality of the proceeding, as the only question for consideration is the sufficiency of the record.

DUNCAN, J., dissenting.

APPEAL from the Circuit Court of Christian county; the Hon. WILLIAM B. WRIGHT, Judge, presiding.

LESLIE J. TAYLOR, for appellants.

HOGAN & REESE, and WALTER M. PROVINE, for appellees.

Per CURIAM: The appellants, as tax-payers and members of the board of education of Community High School District No. 305 in Christian county, caused a writ of *certiorari* to be issued out of the circuit court of said county against the appellees, as county superintendent of schools, county judge and county clerk, respectively, directing that a correct transcript of all records, papers, documents and files belonging to the *ex-officio* board of education of said county be certified to the court for the purpose of determining the legality of certain proceedings had before said board by which certain territory was detached from district No. 305 and attached to non-high-school territory in said county. The court, on motion of appellees, quashed the writ and dismissed the proceedings.

The chief question in the case concerns the application of an act entitled "An act to validate changes in the boundaries of township or community high school districts," approved June 24, 1921. (Laws of 1921, p. 828.) This act of the legislature was held to be valid in *Milstead* v. *Boone,* 301 Ill. 213. By section 1 of the act all changes of boundaries of township or community high school districts whereby territory was detached from a high school district and added to a non-high-school district prior to the

enactment of the act were, subject to the conditions enumerated in section 2, validated. The first condition precedent to the application of the validating act is, that such change has been made by the county superintendent of schools, county judge and county clerk of the county in which the affected territory is situated, acting as an *ex-officio* board. The second condition precedent is, that if the change made is territory detached from a high school district and added to a non-high-school district it must have been made upon a petition signed by a majority of the legal voters at school elections, residing within the territory detached from any community high school district.

While numerous questions are raised by appellants, the ultimate question in the case is whether or not the record of the proceedings of the *ex-officio* board brings it within the provisions of the validating act of June 24, 1921, herein referred to. Such record must, to come within the validating act, show the following: First, such change must be "made by the county superintendent of schools, the county judge and the county clerk of the county in which the districts affected were situated, acting as an *ex-officio* board;" second, "prior to the making such change, the change was petitioned as follows: * * * By a majority of the legal voters at school elections residing within the territory" detached from or added to a high school district. The last clause of section 2 of the act provides that " 'legal voters at school elections' means persons entitled to vote at elections held for the purpose of choosing officers of schools."

The return which was made by the appellees in response to the writ of *certiorari* recites that on November 15, 1919, there was filed in the office of the county superintendent of schools a petition to detach territory from Community High School District 305 and to attach the same to a non-high-school district. The territory sought to be detached was

certain lands in township 16, north, range 1, west, and in township 15, north, range 1, west, the latter being known as Mosquito township. The petition was as follows:

"To Logan Griffith, county judge, John E. George, county clerk, O. P. Simpson, county superintendent of schools, *ex-officio* board of education for Community High School District No. 305:

"The undersigned, being two-thirds of the legal voters residing within the territory hereinafter described, respectfully petition your board to detach the following described territory, which has been and is included within said community high school district, to-wit:"

Thereafter followed the description of the territory sought to be detached and the reasons why the same should be detached. The return then sets out that on the petition appeared the names of 89 women and 124 men, making a total of 213 signatures. The return then recites the giving of the notice of a public hearing to be held on Monday, December 22, 1919, in the county court room at Taylorville, the affidavits of posting notice, and the objections of the board of education of the high school district. The return of the respondents then shows that on December 22, 1919, a hearing was had upon the petition and answer before the county clerk, county judge and county superintendent of schools, which hearing was adjourned until the next day, at which time the board met and announced a decision granting the prayer of the petition, and that O. P. Simpson, county superintendent of schools, made a record of said decision in the records of his office, being in words and figures as follows:

"Pursuant to a petition filed by two-thirds of the legal voters residing in [describing territory,] asking that said territory above described be detached from Community High School District No. 305 and added to the non-high-school territory of Christian county, State of Illinois, a public hearing was held in the office of the county judge in Taylorville, Illinois, Monday, December 22, 1919, beginning at 1:00 P. M. The *ex-officio* board of Christian county, consisting of County Judge L. G. Griffith, County Clerk J. E. George, and County Superintendent of Schools O. P. Simpson, presided at the hearing. Both petitioners and remon-

strators were represented by counsel, John E. Hogan and Walter M. Provine for the petitioners and Leslie J. Taylor for the remonstrators. After hearing the evidence on both sides of the question until four o'clock P. M., December 22, 1919, and the evidence having been all presented and the hearing completed, the *ex-officio* board retired for an executive session in the private office of the county judge, and after a short conference agreed to adjourn and to meet at nine o'clock Tuesday morning, December 23, 1919.

O. P. SIMPSON,
*Secretary Ex-officio Board.*

"At nine o'clock Tuesday, A. D. December 23, 1919, the *ex-officio* board met pursuant to adjournment and decided that the prayer of the petition be granted, and that the above described territory be detached from Community High School District No. 305 and the same assigned to non-high-school territory.

O. P. SIMPSON,
*Secretary Ex-officio Board."*

It is objected that the record thus returned does not comply with the law relating to a record to be kept by a body of this kind. It is conceded by counsel on both sides that in a *certiorari* proceeding the question to be determined is the sufficiency of the record returned. In this case the test is whether or not such record is sufficient to comply with the validating act referred to. In other words, whether or not there had been a change of boundary by the county superintendent of schools, the county judge and the county clerk, "acting as an *ex-officio* board," which action took place subsequent to a petition for a change of boundary "by a majority of the legal voters at school elections residing within the territory detached from the high school district," meaning a "majority of the persons entitled to vote at elections held for the purpose of choosing officers of schools." It is obvious from the record that the county superintendent of schools, county judge and county clerk, acting as an *ex-officio* board, did make a change in the boundary line of the high school district in question by detaching therefrom certain territory and attaching the same to a non-high-school district. The record recites that such

action was pursuant to a petition filed by two-thirds of the legal voters residing in the territory. Counsel for appellants claims that such, however, was not the fact; that since it is shown by the return of the *ex-officio* board that out of the 213 signatures to the petition 89 were women and 124 men, there is no proof beyond the statement in the petition and the records of the *ex-officio* board that the signatures to the petition were by a majority of the legal voters; that the 89 signatures by women were not by legal voters; that it was held by this court in *People* v. *Kinsey,* 294 Ill. 530, that women were not legal voters in the matter of formation of high school districts. Such argument is beside the question. The curative act referred to does not require that the voters signing this petition shall be qualified to vote at all school elections, but, as we have seen, the term "legal voter" is there defined as a person entitled to vote at elections for the purpose of choosing officers of schools. Section 270 of the School law provides that women having the qualifications therein specified shall be entitled to vote at any election held for the purpose of choosing any school officer, and in *Plummer* v. *Yost,* 144 Ill. 68, and *People* v. *Peltier,* 265 id. 630, it was held that by virtue of that section women may vote for any school officer not named in the constitution.

Again, it is urged that the record does not show a compliance with the requirements of the validating act, for the reason that there is no showing, other than in the statement in the petition and the record of the *ex-officio* board, that a petition was signed by a majority of the legal voters, as required by the validating act. If this position be sound then it would be impossible under a writ of *certiorari* (which is to test the sufficiency of the record, only, and in which proceedings the record must stand or fall by what it contains,) to establish the sufficiency of such a record, and there would be no case in which the validating act could be made to apply if the proceedings of the board were attacked

by writ of *certiorari,* and that act would therefore become inoperative.

Counsel for appellants, however, cites the case of *Mc-Keown* v. *Moore,* 303 Ill. 448, as authority for his contention that this record is not sufficient. It is there held that it was the duty of the *ex-officio* board created by section 90 of the School law to keep a record of its acts although the provisions of the statute did not require it to do so. It was also said that *ex-officio* boards created by the invalid amendment of section 90 of the School law had no authority to change the boundaries of high school districts, and that such changes could not be effected unless the validating act herein referred to applied. It was held in that case that there was nothing in the record to indicate that the petition for the change of boundary lines of the school districts was signed by the majority required by the validating act, and it was said: "The recital in the petition itself is no evidence of the fact, and even a finding by the so-called *ex-officio* board would be no evidence, for that body not being legally constituted was without power to make any finding." Appellants contend that this language is conclusive of the record here. What was said in that case referred to the sufficiency of the record involved in that case and is not to be construed as deciding a case like the one before us, where the petition recites it is signed by two-thirds of the legal voters, and the record contains a recital of all jurisdictional facts necessary to have given jurisdiction under section 90 of the School law were the same valid, and likewise a recital of all jurisdictional facts required under the validating act. In the *McKeown case* there was nothing in the record to indicate that the petition was signed by two-thirds of the voters in the territory sought to be detached.

There is no substantial merit in appellants' contention that the record shows the proceeding was before the non-high-school board and not the *ex-officio* board, or that the

return was insufficient because it failed to show the *ex-officio* board organized and elected a secretary. The return shows Simpson acted as secretary, and the order detaching territory is signed by all three members of the board, and they are repeatedly designated as *ex-officio* board.

While the *ex-officio* board, not having legal existence, is not on a parity with those legal boards whose records import verity, yet we are of the opinion that where the acts of the county superintendent of schools, county judge and county clerk, "acting as an *ex-officio* board," are attacked by writ of *certiorari,* which is for the purpose of determining what the record shows, their record must, for the purpose of such proceedings, be considered as evidencing the action of the so-called board and the basis of such action. By invoking the writ of *certiorari* the appellants have asked that the record of those persons so acting be submitted to the court to determine whether or not it is sufficient in law to sustain the action taken. It would be inconsistent to say that such record should be reviewed on *certiorari* without the hearing of parol evidence but that such record does not import verity as to its contents because the parties acting as an *ex-officio* board have no legal standing as such.

It was the evident intention of the legislature in passing the validating act to cure all defective attempts by those acting as an *ex-officio* board to change boundaries of the school districts where the same was petitioned for as required by the validating act. It is necessary, as shown in *McKeown* v. *Moore, supra,* in order to obtain any review whatever of the acts of the *ex-officio* board, that a record be kept and that the same be reviewed by *certiorari.* It is equally necessary, in order that the validating act be not rendered wholly inoperative, that the record submitted by the board be taken as evidence of the jurisdictional statements of fact contained in it.

It is also contended by appellants that section 31 in Mosquito township was not included in the original peti-

tion for detachment, as shown by the certified return made by the appellees, and that the *ex-officio* board exceeded its authority in removing land from the district not requested in the petition to be detached. There is much said in the briefs upon this matter. We find upon examination that appellants, in their petition for the writ of *certiorari,* described the territory sought to be detached as "all of the lands in said Community High School District No. 305 situated in Mosquito township, in Christian county," and then later in the description section 31 of said township is omitted therefrom by counsel for appellants. It appears that section 31, as a portion of the territory sought to be detached, was included in the notice of hearing upon the matter of detachment as executed by the *ex-officio* board and posted by the county superintendent of schools, and likewise appears, as a part of the territory affected, in the record of the *ex-officio* board's action as recorded in the book used therefor by the county superintendent of schools, who was a member of such board. Section 31 is also shown to be a part of the detached territory upon the map later filed by the county superintendent of schools. Although we said in *Milstead* v. *Boone,* supra, that the *ex-officio* board cannot of its own motion change the boundaries of school districts, and such changes must be such as are prayed for in the petition presented to such board, we do not think this seeming discrepancy is at all fatal in this case. The true record made by the county superintendent, acting as secretary of the *ex-officio* board, and all other proceedings relative to the detachment, show that section 31 was a part of the detached territory.

Since the rehearing was granted in this case appellees obtained leave to make certain amendments to the return to the writ, and for that purpose the case was re-docketed in the circuit court of Christian county, and, upon such being done, the several amendments, among which are that section 31 in Mosquito township was a part of the original

territory described in the petition and asked to be detached, have been submitted to this court. The briefs on rehearing are rather lengthy, and contain, in part, most of the same matters formerly presented to this court, and also contain charges and counter-charges as to counsel on the respective sides, particularly concerning the procurement of such amendments to the original return made by appellees. Without going into a discussion of that matter, and without even considering the alleged amendments, we are of the opinion that the record of the *ex-officio* board is sufficient to bring its acts within the validating act of June 24, 1921.

Appellants argue that no one has considered this change as binding and that therefore it should not be enforced. It appears from the record that the district appealed from the decision of the *ex-officio* board to the State Superintendent of Public Instruction, who reversed the same. Thereafter the case of *Jackson* v. *Blair*, 298 Ill. 605, was decided, holding that section 90 of the School law, giving such discretion to the State Superintendent of Public Instruction, was unconstitutional.

Counsel for appellants urges that they have not been sleeping on their rights. Whether there has been acquiescence or not is of no consequence. The matter under consideration is the record of the board and not acquiescence. The appellants cannot hope to reach that question through *certiorari*.

The record is sufficient to bring the case within the validating act, and the court did not err in so holding. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DUNCAN, dissenting.