(No. 15615.—Judgment affirmed.)
SAMUEL CHESNEY *et al.* Appellants, *vs.* ANNA HOLLIDAY MOEWS *et al.* Appellees.

*Opinion filed April 24, 1925.*

1. SCHOOLS—*signatures to petition for organizing school district need not be verified by affidavit.* The county superintendent of schools is authorized to act upon a petition for an election to organize a community high school district where the petition is signed by the requisite number of qualified legal voters, and no affidavit is required to verify the signatures to the petition, as they may be accepted as genuine in the absence of a contrary showing.

2. SAME—*what is sufficient to show posting of notices of election.* Where the county superintendent's record affirmatively shows that proper notice was given for an election to organize a community high school district, the facts from which it may be concluded that notice was given need not be shown in any particular form in a *certiorari* proceeding; and where the county superin-

tendent finds that notices have been posted in eighteen of the most public places in the territory at least ten days prior to the election, and so states in the official record, which is not contradicted, the statute is complied with although the affidavit of the person who posted the notices is not complete.

3. SAME—*when record sufficiently shows result of election to organize district.* Where the poll-book, tally-list and returns are set out at length in and made parts of the county superintendent's record of the holding of an election to organize a community high school district, the record is sufficient to show the result of the election in a *certiorari* proceeding although the certificate of the judges of election fails to contain a statement of the total number of votes cast or of the number of votes against the proposition.

DUNN, J., dissenting.

APPEAL from the Circuit Court of Putnam county; the Hon. CHARLES V. MILES, Judge, presiding.

CLAUDE BROWN, and J. L. SPAULDING, for appellants.

GEORGE W. HUNT, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

On April 14, 1922, a petition purporting to be signed by 110 legal voters and residents of certain territory particularly described was filed in the office of the county superintendent of schools of Putnam county. It requested that the county superintendent, pursuant to section 89a of chapter 122 of the Revised Statutes, (Smith's Stat. 1921, p. 1782,) order an election for the purpose of voting for or against the proposition to establish a community high school within the territory. The election was held and the district declared organized. Subsequently, on October 17, 1922, Samuel Chesney and 45 other legal voters and taxpayers of that territory filed their petition for a writ of certiorari in the circuit court of Putnam county, directed to Anna Holliday Moews, the county superintendent of

schools, Olden C. Cofoid, the county clerk, and J. M. Williams, the secretary of the board of education of the community high school. The petition alleged, among other things, that there was no sufficient proof or finding of record that the persons who signed the petition to establish the high school were at the time legal voters of the territory; that the county superintendent had no authority to receive or consider the initiating petition or to order an election pursuant thereto; that the affidavit of the person who obtained the signatures to that petition was not made until six months after the election had been held; that there was no sufficient proof that at the time of the filing of the petition the signatures thereto were genuine; that the record failed to show the posting of the notices of election as required by law; that the poll-book, tally-list and returns of the election were defective, erroneous and insufficient to show the result; that the county superintendent had not kept a proper record of her acts in the purported organization of the district and that the proceedings to that end and for that purpose were illegal.·

On consideration of the petition for a writ of *certiorari* the court ordered the writ to issue. The defendants made their return thereto on April 16, 1923. It consists of a transcript of the record of the proceedings of the county superintendent of schools. The pertinent facts shown by that record are as follows: (1) Petition to establish a community high school, filed April 14, 1922; (2) affidavit of August Lith, verified October 17, 1922, and filed on the same day, that he circulated the petition and saw the petitioners sign their names thereto; that each petitioner, both at the time of signing and filing, was a legal voter and resident of the territory described in the petition; that the signatures thereto are genuine except the name of Mrs. Mary Ward, which was signed by W. J. Ward; that Lith caused the petition to be filed without an affidavit, not knowing

317—8

that proof was necessary, and that the petition is in the condition it was when it left his possession, with the exception of the endorsement of its filing by the county superintendent; (3) order by the county superintendent that an election be held on May 20, 1922, between the hours of two and five o'clock P. M., in the school house in district 534, in Senachwine township, Putnam county, in the territory described in the petition, for the purpose of voting for or against the proposition to establish a community high school for the benefit of the inhabitants of that territory; notice of election by the county superintendent dated May 1, 1922, stating the time, place and purpose of the election and setting forth a particular description of the territory included within the proposed district; statement by the county superintendent that she caused duplicate originals of the notice to be posted for at least ten days in eighteen of the most public places throughout the same territory, and proof of posting by the affidavit of George E. Wheeler, dated at Putnam, Illinois, May 9, 1922, and verified on the same day, in which he states that he posted the notices of election in eighteen places, specifying them, but without stating the district, town or county in which those places are situated; (4) statement that the county superintendent appointed the judges and clerk of election and transmitted to them the official ballots, poll-books, forms and blanks; that the judges and clerk qualified as such, conducted the election and made return thereof, consisting of a special poll-book, tally-list and certificate, all of which were filed in the county superintendent's office on May 22, 1922; (5) poll-book or list setting forth the names of 215 voters who cast their ballots at the election; tally-list showing that 115 votes were cast for and 100 votes against the establishment of a community high school; returns showing the same result as the tally-list, and certificate of the judges of election that the proposition for the establishment of a community high school received 115 votes and that it was carried by a ma-

jority of 15 votes; and (6) canvass of election and find-
ing of result, declaration by the county superintendent that
the proposition submitted was carried, and order that the
territory described in the petition constitute a community
high school district, in which there shall be maintained a
community high school for the benefit of its inhabitants;
that the board of education of the district, when elected
and qualified, shall be a body politic and corporate by the
name of "Board of Education of Community High School
District No. 853, county of Putnam and State of Illinois,"
and by that name may sue and be sued; that the foregoing
proceedings and the map of the district and list of tax-
payers attached to and made a part of the record be spread
upon the records of the county clerk, and that the county
clerk extend all taxes assessed by the board of education
against the property in the district for the purpose of estab-
lishing and maintaining a community high school. The cer-
tificates of the county superintendent of schools and of the
county clerk that the transcript is a true and correct copy
of the record in their respective offices are appended.

Samuel Chesney and his co-petitioners made a motion
to quash the return to the writ of *certiorari.* The respond-
ents made a counter-motion to quash the writ. The motion
of the petitioners was denied while respondents' motion to
quash the writ was sustained and the suit was dismissed.
The petitioners prosecute this appeal.

·The proceedings for the organization of the community
high school district in question were conducted by authority
of section 89*a* of the act to establish and maintain a system
of free schools, (Laws of 1919, p. 908,) effective July 1,
1919. In part the section provides: "Upon the receipt of
a petition signed by fifty or more legal voters residing in
any contiguous and compact territory, whether in the same
or different townships, described in the petition, the county
superintendent of schools of the county in which the terri-
tory or the greater part thereof is situated, shall order an

election to be held for the purpose of voting for or against the proposition to establish a community high school, by posting notices for at least ten days in ten of the most public places throughout the said territory."

Appellants contend that because the affidavit of August Lith, which purports to verify the signatures to the petition for an election to vote upon the question of organizing the district, was not verified until October 17, 1922, or more than six months after the filing of the petition, there was no proof that the petition was properly signed by the required number of legal voters at the time it was filed in the office of the county superintendent of schools. A sufficient answer to this contention is that the affidavit which appears in the record is not required by the statute. The county superintendent would have been authorized to act upon a petition signed by the requisite number of qualified legal voters, accepting the signatures appended to the petition as genuine, in the absence of a contrary showing. *People* v. *Logan County,* 45 Ill. 162; *People* v. *Dillon,* 266 id. 272; *People* v. *Buskirk,* 279 id. 203; *People* v. *Lueders,* 287 id. 107.

It is further contended by appellants that the election was a special one; that proper notice thereof was jurisdictional; that the giving of such notice must affirmatively appear of record; that in the instant case the record fails to show that such notice was given, and hence that the election is void. To support this contention appellants argue that the affidavit by George E. Wheeler, who posted the notices of the election, does not purport to be directed to the county superintendent of schools of Putnam county, nor does it identify those notices as having any reference whatever to the election for the organization of the district in question; that the places where the notices were posted are not identified as located within the territory described in the petition, nor are they certified to be the most public places throughout that territory, and that the record fails to show

the date of the posting of the notices or the purpose for which they were posted.

The county superintendent of schools did not personally post the notices of the election. It was not incumbent upon her to do so. She caused these notices to be posted by George E. Wheeler. Upon the discharge of this duty Wheeler made an affidavit, the body of which is in the form of a letter addressed to Anna Holliday Moews, dated Putnam, Illinois, May 9, 1922, in which, after acknowledging the receipt of the notices from her and stating that he had posted them in eighteen different places, specifying each, he adds: "The above described places are true and correct where I posted the notices of the election for a community high school. Said election to be held on the 20th day of May, A. D. 1922." The record of the county superintendent shows that she gave notice of the election by causing eighteen duplicate original notices to be posted for at least ten days in eighteen of the most public places throughout the territory described in the petition for the organization of the district. The affidavit of Wheeler was directed to the person who was the county superintendent of schools, and the election on May 20, 1922, to which he makes reference, can be none other than the election to vote upon the question of organizing the district, held on the same day. While Wheeler does not state in his affidavit that the eighteen places at which he posted the notices are within the territory described in the petition to establish the district, yet the record shows that Putnam, where the affidavit was dated, is within that territory. The affidavit that the notices had been posted was made on May 9, 1922. The election was held on the 20th of May following. Hence the posting of the notices occurred at least ten days prior to the election, and the affidavit expressly states that the notices were "of the election for a community high school." Moreover, the record of the county superintendent shows that the notices were posted at least ten days before the elec-

tion, in eighteen of the most public places throughout the proposed district.

But it is insisted by appellants that the affidavit of Wheeler is necessarily the only source of the county superintendent's knowledge or information concerning the posting of the notices and that it fails to show a compliance with the statute. The facts from which it may be concluded that notice was given need not be shown in any particular form. It was the duty of the county superintendent of schools to determine whether or not the places at which the notices had been posted were ten of the most public places within the district sought to be organized. In making that determination she was not confined to Wheeler's affidavit but might bring into contribution any additional facts within her knowledge. She found that the notices had been posted in eighteen of the most public places throughout that territory, and so stated in her official record. The affidavit of Wheeler might have been amplified. It does not, however, contain anything contrary to, but its averments are wholly consistent with and support, the finding of the county superintendent. Her record affirmatively shows that proper notice of the election was given. In *Shinkle* v. *Magill,* 58 Ill. 422, the laying out of a public highway was involved. The statute required three notices of the time and place fixed for hearing reasons for or against the establishment of a public road to be posted in three of the most public places in the town at least eight days previous to the time of meeting. The final order of the commissioners establishing the highway recited that notices had been so posted, and it was held that there could be no higher or better evidence of the fact. To the same effect are *Frizell* v. *Rogers,* 82 Ill. 109, *Cummings* v. *West Chicago Park Comrs.* 181 id. 136, and *McDonald* v. *Road District,* 292 id. 386. Notice in the manner prescribed by section 89*a* of the School act is essential to the validity of an election held pursuant to its provisions and

that such notice was given must appear from the record. Compliance with the requirements of that section in respect to such notice is shown by the record in this case.

Finally, appellants contend that the certificate of the judges of election does not contain either a statement of the total number of votes cast or of the number of votes against the proposition to establish the community high school. Both the poll-book and the tally-list show the number of votes cast at the election. The tally-list and the returns show the number of votes cast for and against the proposition submitted. The poll-book, tally-list and returns are set out at length in and made parts of the county superintendent's record. That record further shows that the returns of the election were canvassed, and that it was found and declared that 115 votes were cast for and 100 votes against the proposition to establish a community high school, and that the proposition was carried by a majority of 15 votes. While the certificate of the judges of election is incomplete, its omissions are amply supplied by other portions of the record.

Fraud or wrongful intent in the conduct of the proceedings to create the district is neither charged nor suggested and no qualified voter was deprived of his vote. None of the irregularities disclosed by the return to the writ were of such a nature as to invalidate the election or to defeat the organization of the district. *People* v. *Miller,* 304 Ill. 279; *People* v. *Kinsey,* 294 id. 530; *Ackerman* v. *Haenck,* 147 id. 514; *Behrensmeyer* v. *Kreitz,* 135 id. 591.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DUNN, dissenting:

I do not agree that the return to the writ of *certiorari* shows that the respondent had any authority to call the election. Upon the return to a writ of *certiorari* the record returned in obedience to the writ must be inspected by the court and the question determined by that record, alone,

whether or not the tribunal whose action is questioned had jurisdiction or exceeded its jurisdiction or otherwise proceeded contrary to law. Neither the allegations of the petition nor any fact not contained in the record returned can be considered. It is essential that the record returned show the existence of every fact necessary to authorize the respondent to act. (*Commissioners of Highways* v. *Smith,* 217 Ill. 250; *Southworth* v. *Board of Education,* 238 id. 190.) The statute requires as the basis of the county superintendent's authority to call an election a petition signed by at least fifty legal voters. It was therefore necessary that the record returned should show such a petition, but it did not. It showed only a petition with signatures attached. Upon this petition the election was called, as a result of which the superintendent later declared the district organized. Months later, and on the same day the petition for a writ of *certiorari* was filed, an affidavit was filed with the superintendent showing that the signers of the petition were legal voters resident in the territory, but this was no part of the record on which the organization of the district had months before been declared complete. That record cannot be supported, where it is defective, by facts shown by oral or other evidence. The opinion of the court, recognizing this rule, is not based on this affidavit, but states that to the contention that there was no showing that the petition was signed by the required number of voters it is a sufficient answer that the affidavit was not required by the statute, but that the county superintendent would have been authorized to act on the petition, accepting the signatures as genuine, in the absence of a contrary showing.

It is true that the affidavit was not required, but it is not true that the county superintendent could act upon the petition without any investigation as to whether it complied with the statute or not. In *certiorari* it is essential that the record show the existence of the facts required to authorize the officer or tribunal to act. Not only is this

proposition established by the cases which have been referred to and the authorities therein cited, but the necessity of such a showing in the record is further illustrated by the very recent cases of *Trustees of Schools* v. *Hoyt,* 311 Ill. 532, *People* v. *Hartquist,* id. 127, and *Bierbaum* v. *Smith,* (*post,* p. 147.) In the case first cited it was held that a petition signed by the number of voters required by the statute is a condition precedent to the exercise of the power of a board of education to call an election for the purpose of authorizing the purchase or location of a school house site; in the second, that the organization of a school district may be attacked by *certiorari,* and in that case the record of the organization is the only lawful evidence of the action taken and cannot be contradicted or supplemented by parol; and the third case is similar to the first, in which it was held that a finding by the board that the petition was signed by five hundred legal voters, or one-fifth of all the legal voters of the district, was essential before the board was authorized to act, and a recital that a petition duly signed had been presented to the board was not such finding. So the recital in the petition itself that its signers are legal voters is no evidence of the fact. (*McKeown* v. *Moore,* 303 Ill. 448.) The record contains no finding of this jurisdictional fact and therefore shows no authority to call the election.

The cases cited in the opinion of the court to the effect that the county superintendent was authorized to act on the petition without any finding as to whether it was signed by the requisite number of voters do not sustain the proposition. *People* v. *Logan County,* 45 Ill. 162, was a *mandamus* suit to require the county board to act, and *People* v. *Buskirk,* 279 Ill. 203, was an information in the nature of a *quo warranto* to oust school directors. In each there was a plea raising the direct issue of the number of signers and no question as to the sufficiency of the record on *certiorari* arose. The other two cases were petitions for

writs of *mandamus* against town clerks to require them to place on the ballots to be voted at the town election the question, "Shall this town become anti-saloon territory?" The statute provided for the form of the petition and required that the signatures should be made by the voters in person, with the residence address of the voter written op· posite the signature and the date of signing. It was further required that at the bottom of each sheet of the petition there should be added a statement signed by a resident of the county, with his residence address, stating that the signatures on that sheet of the petition were genuine, that to the best of his knowledge and belief the persons signing were legal voters, that their residences were correctly stated, and that each signer signed at the date set opposite his name. The statute further provided that such petition so verified, or a copy thereof duly certified, should be *prima facie* evidence that the signatures, statement of residence and dates upon such petition were genuine and true and that the signers were legal voters, and required the clerk, upon the filing of any such petition, to give notice of the submission of the proposition at the next election. The statute, it will be observed, provided that the petition itself should be evidence of its sufficiency and required the clerk to act upon it, and the cases hold that it was his duty to do so and he could be compelled by *mandamus* to perform this ministerial duty. They are not authority for saying that a petition having no evidentiary value may be accepted and acted upon as the basis for calling an election, with no evidence of its conformity to the requirements of the statute and the conditions precedent to the right to call the election.